BERTIE McDERMOTT, Respondent, v. MODERN WOODMEN OF AMERICA, a Corporation, Appellant.

St. Louis Court of Appeals, January 20, 1903.

1. **Foreign Fraternal Benefit Societies:** STATUTORY CONSTRUCTION. A foreign fraternal beneficiary association, such as the Modern Woodmen of America, which has complied with the laws of Missouri relating to fraternal beneficiary associations, is subject to the burdens and entitled to the immunities pertaining to those societies in this State, their status and responsibilities being prescribed by a particular article of the statutes (article 2, chapter 12) and not by the general insurance statutes (section 1410, Revised Statutes 1899).

2. ———: ———. Under the provisions of sections 1409 and 1410, Revised Statutes 1899, it was intended not only to permit foreign associations to do business in this State if they comply with the statutes, but to do it on the same terms domestic corporations may.

4. **Insurance:** FRATERNAL BENEFIT SOCIETIES: STATUTORY CONSTRUCTION. The proviso that no misrepresentation made in obtaining or securing a policy of insurance on the life of a citizen of this State shall be deemed material or render the policy void unless the matter misrepresented shall have actually contributed to a loss on the policy (Revised Statutes 1899, section 7840), is not contained in the article on fraternal beneficial societies, but in the one on ordinary insurance and is not binding on fraternal societies.

4. ———: ———: ———: ———. And it is sufficient to avoid the policy or certificate counted on in the case at bar, that any false statement or representation, whether material to the risk or not, was made by the deceased to procure it, and inasmuch as all the answers to the questions propounded to him were agreed to be warranties, if any of them were false, the contract is annulled whether the false statement was fraudulently or innocently made.

5. ———: ———: ———: REPRESENTATIONS IN APPLICATION FOR INSURANCE: WARRANTIES. The difference between the legal effect of a mere representation and a warranty is, that if the representation turns out to be substantially true as to facts material to the risk, the policy of insurance which it induced will be upheld, although the representation was false in unessential particulars; but a warranty must be strictly true, as it defines the limits of the obligations assumed by the insurer and if it is false in any part, whether that part affects the risk or not, there can be no recovery on the contract.

6. ———: ———: ———: ———: ———: CERTIFICATE OF INSURANCE: APPLICATION FOR INSURANCE. In the case at bar, both the certificate sued on and M's application declared in strong and reiterated language that the answers in the application were warranted to be literally and exactly true and that their literal and exact truth was a condition precedent to any binding contract between M. and the company. *Held*, that the answers of the applicant were made warranties by the agreement of the parties without regard to their materiality, and the question for decision is, was any of them shown to be false in such sense as to render the contract void.

7. ———: ———: ———: ———: ———. In the case at bar, the applicant answered the interrogatory as to whether he was of sound mental and physical health and free from disease or injury at the date of the application for insurance, in the affirmative, and it is asserted by the defendant that this answer was false, and the trial court instructed the jury that the meaning of the inquiry was whether or not the applicant have any grave, important or serious disease, whether he had a state of health free from disease or ailment which affected his general healthfulness and the soundness of his system, and that the inquiry did not embrace a temporary ailment or indisposition having no tendency to undermine or weaken the constitution: *Held*, that although the applicant had some slight temporary ailment, he could say with literal and exact truth that he was free from disease within the meaning of the interrogatories addressed to him.

8. ———: ———: ———: ———: ———. Where, as in the case at bar, it is conceded that the applicant for insurance, in a fraternal beneficiary society, stated that he had not been visited by a doctor and had not been treated for an ailment for seven years, when in truth and in fact he had been visited and treated by a physician within a month before making application for insurance, and that said applicant misstates the fact, and that the answer was a warranty, this will defeat an action by the beneficiary for insurance on the policy.

Appeal from Clark Circuit Court.—*Hon. Edwin R. Mc-Kee,* Judge.

REVERSED.

*J. G. Johnson* and *W. T. Rutherford* for appellant.

(1)   Appellant is a fraternal benefit society, as defined by the laws of Missouri, governing such societies. Sec. 1408, R. S. 1899; Brassfield v. M. W. of A., 88 Mo. App. 208.   (2)   Any society, corporation or organization coming within the provisions of section 1408, Revised Statutes 1899, and doing business in this State under article 2, chapter 12, Revised Statutes 1899, is not subject to the general insurance laws of Missouri which include sections 7890 and 7891, and appellant issued its benefit certificate under said article and chapter.   Whitmore v. Sup. Lodge, 100 Mo. 46; Laws of Missouri, 1897, p. 132; Hastings v. Littledale, 150 Mass. 100; Bacon on Benefit Societies, par. 50; Hanford v. Mass. Ben. Ass'n, 122 Mo. 50; Elliott v. Life Ins. Co., 163 Mo. 132, and cases cited.   (3)   Where, as in the case at bar, the insured in his application warrants the statement therein to be true, and agrees that any untrue statement or any concealment of facts may forfeit all rights under the contract, and the insured as part consideration of the contract agrees that the statements made in the application are the basis of the contract of insurance, and are warranted to be true in all respects, all the representations are warranties, and any representation, whether material or immaterial, will avoid the policy.   Joyce on Ins., secs. 1842, 1944, 1970; Baumgart v. M. W. of A., 55 N. W. 713; Whitmore v. Sup. Lodge, 100 Mo. 47; Leinz v. Ins. Co., 8 Mo. App. 364. (4)   Where there is no controversy as to the facts, the verdict of the jury should be directed by the court. Hoster v. Lange, 80 Mo. App. 234; Bank v. Bank, 151 Mo. 320.

*Charles Hiller, Whitesides & Yant* and *James C. Davis* for respondent.

(1) Rules as to the construction of contracts of insurance: American Surety Co. v. Pauly, 170 U. S. 133, 18 S. C. R. 552; Mutual Reserve Ass'n v. Farmer, 47 S. W. 850; Provident Life Soc. v. Reutlinger, 25 S. W. 836; Association v. Gillespie, 110 Pa. St. 84, 1 Atl. 340; Wilkinson v. Ins. Co., 30 Iowa 119; Ins. Co., v. Wilkinson, 13 Wall. 222.   (2)   A provision in a contract requiring an impossibility will not be enforced. Eggleston v. Ins. Co., 65 Iowa 315; Bumstead v. Ins. Co., 12 N. Y. 92; Ins. Co. v. Boykin, 12 Wall. 436; Peele v. Provident Society, 44 N. E. 663.   (3)   In construing the question and answer in the application, ''Have you within the last seven years been treated by or consulted any physician, or physicians, in regard to personal ailment?'' the true construction of the term, ''personal ailment,'' as used in the application for insurance, does not refer to a trifling, temporary disorder, not serious in its nature.   Brown v. Ins. Co., 65 Mich. 306, 32 N. W. 610; Hann v. National Union, 97 Mich. 513, 56 N. W. 834; Plumb v. Life Ins. Co., 65 N. W. 612; Billings v. Life Ins. Co., 41 Atl. 517.

GOODE, J.—On March 16, 1901, the appellant, the Modern Woodmen of America, which is a fraternal insurance company (or this case was tried on that theory) organized under the laws of the State of Illinois, issued a benefit certificate to Robert L. McDermott, in favor of the respondent, Bertie McDermott, for the sum of two thousand dollars.  The certificate or policy was issued in Clark county, Missouri, the appellant company having complied with the laws of this State and being entitled to do business in it.

McDermott died in the city of St. Louis October 18, 1901, after a surgical operation intended to relieve him from a malignant tumor on his neck; and the defendant company having refused to pay the amount

called for in the benefit certificate, the present action was instituted to recover it.

The defense is based on alleged false answers to certain questions propounded to the deceased in his application for insurance, which answers are asserted to have been warranties of the truth of the matters stated in them.

Those questions and answers were as follows:

"14. Have you within the last seven years been treated by or consulted a physician or physicians in regard to personal ailment? No. If so, give dates, ailment, and physician or physicians name and address.

"15. Are you now of sound mind and health and free from disease and injury, of good moral character and exemplary habits? Yes.

"16. Have you ever had any local disease, personal injury or serious illness? No."

No showing was made that the answer to question sixteen was false other than was included in the proof relating to the answer to question fifteen. It was proven that on the ninth day of February, prior to the issuance of the certificate in March, McDermott had consulted Dr. Bridges of the town of Kahoka, complaining of pain in the stomach and indigestion, and that said physician gave him a prescription. On the twenty-third day of February, McDermott made the same complaints and was given the same prescription, which was one commonly administered for indigestion. He afterwards called in Dr. Bridges on the fifteenth day of April, who found him at his home suffering from liver complaint and Dr. Bridges treated him from that time until a short time before he died. There was testimony tending to prove he had cancer of the stomach, from which developed the malignant tumor on his neck under the point of the jaw, and that he died from exhaustion, partly caused by his disease and partly by the surgical operation. There was also testimony that McDermott looked healthy when he took the insurance, was able to do hard and continuous labor and was regarded by his acquaintances as a healthy man; that the appellant's physician examined

him and recommended him as a first-class risk.  It was
also testified by a physician that no one could say
whether or not the disease that killed him was present
in an incipient state when he was prescribed for in
February.

Appellant contends the foregoing proof showed
conclusively the falsity of the answers made by Mc-
Dermott to questions fourteen and fifteen in his appli-
cation; while the respondent insists that the testimony
showed McDermott's illness, when he consulted Dr.
Bridges in February before taking the insurance in
March, was of so trifling a nature as not to constitute
a personal ailment, local disease or serious illness within
the meaning of the application, or, at all events, it was
for the jury to say whether he did or did not answer
falsely and whether there had been a breach of war-
ranty, if the answers in the application amounted to
warranties.

The trial court took the respondent's view of the
matter and gave, at the latter's request, the following
instructions over the objection of appellant.

"1.  In construing the proposition as to whether
or not the plaintiff's deceased husband had been treated
by or consulted a physician, as contemplated in the
application for the contract of insurance sued on, you
are instructed that merely calling into a doctor's office
for medicine to relieve a temporary indisposition, not
serious in its nature, or consulting concerning some in-
disposition of a trivial nature, would not be being
treated by or consulting a physician as contemplated in
the said application.

"2.  One of the defenses relied upon by defendant
in this case is that the applicant falsely answered the
following question in the application upon which the
contract of insurance sued on was issued, to-wit:  'Are
you now of sound body, mind and health, free from
disease or injury?'  This question was answered 'Yes.'
The jury are instructed that sound body, mind and
health and free from disease or injury means that at the

Vol 97 app—41.

time of the application the insured had no grave, important or serious disease. It means a state of health free from any disease or ailment that affects the general soundness and healthfulness of the system generally, and not a mere indisposition which does not tend to weaken or undermine the constitution of the insured. A mere temporary ailment or indisposition which does not tend to weaken or undermine the constitution at the time of making the application would not render a policy void.

"3. The jury are instructed that, practically speaking, a disease must have some time of commencement. On one day the victim may be free from disease, and on the next day the disease may be said to have commenced. There may be bacilli or premonitory symptoms of a disease, yet it may not have progressed so far as to be actually termed a disease. So in this case, in the months of February and March, prior to the taking of the application and delivery of the policy in this case, there may have been premonitory symptoms of the disease that would not arrive at the importance of the disease itself; and you are therefore instructed that the mere premonitory symptoms could not in the first instance be recognized as the existence of a specific disease."

This instruction asked by appellant was refused:

"a. In the application made by McDermott (which is undisputed) for the benefit certificate sued on, the said McDermott was asked in said application the following direct and specific question: 'Have you within the last seven years been treated by or consulted any physician or physicians in regard to personal ailment?' and in answer to said question said McDermott answered 'No.' And if the jury believe from the greater weight of the evidence in the cause that said answer was not full, complete and literally true, then the plaintiff can not recover in this case, and it is immaterial as to whether or not such ailment was slight or serious or even merely temporary."

These instructions were given at appellant's request:

"1. The court instructs the jury that in this case you will look for the contract to be enforced between plaintiff and defendant in the benefit certificate, which is undisputed, and in the application therefor which is undisputed, and in such of defendant's by-laws as have been read in evidence, and you are to give all of these elements of the contract equal consideration in determining the contract sued on in this case.

"2. In the application of Robert L. McDermott for the benefit certificate sued on you will find numerous statements and answers to questions as to his present and past health; you are instructed that said application and contract is what is known in law as a strict warranty and that each and all of the answers and statements contained in said application must have been full, complete and literally true before the plaintiff can recover in this action.

"3. In the application made by McDermott (which is undisputed) for the benefit certificate sued on, the said McDermott was asked in said application the following direct and specific question: 'Are you now of sound body, mind and health and free from disease and injury?' and in answer to said question McDermott said 'Yes.' Now if the jury believe from the greater weight of the evidence in the cause that said answer was not full, complete and literally true, or that at the time of making said application McDermott was suffering from disease, then the plaintiff can not recover in this case, and your verdict will be for the defendant; and it is immaterial that at the time of making the application Robert McDermott knew or did not know that he had a disease, if it be a fact that he had a disease at said time."

The principal point in the case must be determined in view of certain provisions contained in the certificate and in the application, and also in the by-laws, but the latter need not be recited.

The benefit certificate on which the action is based contains, among other things, the following clauses:

"1. That the application for membership in this

society made by the said member, a copy of which is hereto attached and made part hereof, together with the report of the medical examiner, which is on file in the office of the head clerk, and is hereby referred to and made a part of this contract, is true in all respects, and that the literal truth of such application, and each and every part thereof, shall be held to be a strict warranty and to form the only basis of the liability of this society to such member, and to his beneficiary or beneficiaries, the same as is fully set forth in this benefit certificate.

"2. That if said application shall not be literally true in each and every part thereof, then this benefit certificate shall, as to the said member, his beneficiary or beneficiaries, be absolutely null and void."

The application, immediately following the questions propounded to McDermott for insurance and his answers thereto, contained the following stipulations:

"APPLICANTS WILL PLEASE NOTE THIS CLAUSE.

"I have verified each of the foregoing answers and statements from 1 to 28, both inclusive, adopted them as my own, whether written by me or not, and declare and warrant that they are full, complete and literally true, and I agree that the exact, literal truth of each shall be a condition precedent to any binding contract issued upon the faith of the foregoing answers. I further agree that the foregoing answers and statements, together with the preceding declaration, shall form the basis of the contract between me and the Modern Woodmen of America, and are offered by me as a consideration for the contract applied for, and are hereby made a part of any benefit certificate that may be issued on this application, and shall be deemed and taken as a part of such certificate; that this application may be referred to in said benefit certificate as the basis thereof, and that they shall be construed together as one entire contract; and I further agree that if any answer or statement in this application is not literally true, or if I

shall fail to comply with and conform to any and all of the laws of said Modern Woodmen of America, whether now in force or hereafter adopted, that my benefit certificate shall be void. And I waive for myself and beneficiaries all claim of benefit under this application until it shall be approved by the head physician and I shall be regularly adopted in accordance with the ritual of this society and shall make the payments as required by its by-laws at adoption; and any certificate which shall be issued to me in pursuance of this application shall be delivered to me after adoption and while in sound health, and in pursuance of the by-laws of the society. And I hereby expressly waive for myself and beneficiaries the privileges or benefits of any and all laws which are now or may hereafter be in force making incompetent the testimony of or disqualifying any physician from testifying concerning any information obtained by him in a professional capacity. And I further expressly waive for myself and my beneficiary or beneficiaries the provisions of any law, and the statutes of any State, now in force or that may hereafter be enacted, that would, in the absence of this agreement, modify or conflict with my contract with this society, or cause it to be construed in anyway contrary to its express language.

"ROBERT L. McDERMOTT, Applicant.
"Date, Feb. 27, 1901."

A verdict was rendered for the respondent for the amount of the certificate and an appeal was taken by the society.

1. As the appellant company had complied with the laws of the State of Missouri relating to fraternal beneficiary associations, it is subject to the burdens and entitled to the immunities pertaining to those societies in this State, their status and responsibilities being prescribed by a particular article of the statutes (art. 11, chap. 12) and not by the general insurance statutes. R. S. 1899, sec. 1410.

It was decided by the Supreme Court in Kern v. Legion of Honor, 167 Mo. 471, that only domestic fra-

ternal societies enjoy exemption from the general in-
surance laws subsequent to the adoption of the Revised
Statutes of 1889, because the act of the General Assem-
bly of March, 1881, which extended the exemption to
foreign societies, was left out of that revision.  That
opinion, however, related to a contract for fraternal in-
surance made and performed by the insured in 1895,
and had no occasion to consider the effect of the Act of
March 16, 1897, permitting associations organized under
the laws of other States to be admitted to do business in
this State on terms prescribed by said act.  By that act
it was intended not only to permit foreign associations
to do business in this State if they comply with the
statutes, but to do it on the same terms domestic associa-
tions may; and as the act was carried into the last re-
vision of the statutes, it is now a part of the law of the
State.  R. S. 1899, secs. 1409, 1410.

The proviso that no misrepresentation made in
obtaining or securing a policy of insurance on the life
of a citizen of this State shall be deemed material or ren-
der the policy void unless the matter misrepresented
shall have actually contributed to a loss on the policy
(R. S. 1899, sec. 7840) is not contained in the article on
fraternal beneficial societies, but in the one on ordinary
insurance and is not binding on fraternal societies.
Whitmore v. Legion of Honor, 100 Mo. 36; Hanford v.
Benefit Ass'n, 122 Mo. 50; Hayne v. Knight Templars,
etc., 139 Mo. 416; Jacobs v. Life Ins. Co., 142 Mo. 49.
It is sufficient, therefore, to avoid the policy or certifi-
cate counted on in this case, that any false statement or
representation, whether material to the risk or not, was
made by the deceased to procure it; and inasmuch as
all the answers to the questions propounded to him
were agreed to be warranties, if any of them was false,
the contract is annulled, whether the false statement was
fraudulently or innocently made.  In other words as
the answers were warranties and not representations,
it need not be shown that McDermott answered falsely
from a corrupt motive in order to avoid the certificate.

It is only necessary to show the answers were in fact false.

The essential difference between a representation and a warranty in a contract of insurance, when there is no statute touching the matter, is that a representation is a statement by the applicant to the insurer of information which the latter may desire in order to determine whether the risk will be written; the statement being no part of the contract but only an inducement to make it. But a warranty becomes a part of the contract itself. Blumer v. Insurance Co., 45 Wis. 622; Glendale Woolen Co. v. Ins. Co., 21 Conn. 19; Campbell v. Life Ins. Co., 98 Mass. 389. That is the difference between the two things, and the difference between their legal effect is that if a representation turns out to be substantially true as to facts material to the risk, the policy which it induced will be upheld, although the representation was false in unessential particulars. But a warranty must be strictly true, as it defines the limits of the obligation assumed by the insurer, and if it is false in any part, whether that part affects the risk or not, there can be no recovery on the contract. Aloe v. Life Ins. Co., 147 Mo. 561.

Contracts of insurance have given the courts more trouble, perhaps, than any other class of agreements, for the reason that insurance companies dictate the terms of their policies and have always been inclined to fill them with various conditions and provisos, which, whether material to the risk or not, are insisted on to defeat liability if a loss occurs.

To prevent companies from evading payment because of the breach of some warranty when the breach has nothing to do with the loss, courts have uniformly construed statements by the assured to be representations instead of warranties when the contract permitted such a construction; and in many States, including this one, legislation has been enacted providing that no misrepresentation shall constitute a defense unless the fact misrepresented contributed to the loss.

Our Legislature has seen fit, however, to exempt fraternal societies from the operation of this statute and to leave them still free to avoid their policies for breaches of immaterial warranties; so that the present case must be decided with that legislative policy in mind, and no strained interpretation of the contract adopted in order to give the beneficiary a better standing than the statutes do.

2. Both the certificate sued on and McDermott's application declared in strong and reiterated language that the answers in the application were warranted to be literally and exactly true and that their literal and exact truth was a condition precedent to any binding contract between McDermott and the company. The answers were made warranties by the agreement of the parties without regard to their materiality, and the question for decision is, was any of them shown to be false in such sense as to render the contract void; or, rather, were the instructions to the jury as to how they were to decide, whether they were true or false, sound law?

(a) McDermott answered the interrogatory whether he was of sound mental and physical health and free from disease or injury at the date of the application, in the affirmative, and it is asserted this answer was false. As to that issue of fact the most that can be said in favor of the company is that there was evidence tending to show McDermott's health was then unsound: But the evidence having that tendency was not uncontradicted, for there was much testimony to show his health was good and that he was free from disease.

The trial court instructed the jury that the meaning of the inquiry was whether McDermott had any grave, important or serious disease; whether he had a state of health free from disease or ailment which affected his general healthfulness and the soundness of his system; that the inquiry did not embrace a temporary ailment or indisposition having no tendency to undermine or weaken the constitution.

Warranties must be strictly true according to the intention of the parties; but what was intended and understood to be warranted is ascertained by the same rules of interpretation applied to other contracts, and all reasonable doubts about the compass of a warranty will be resolved in favor of the insured.    Association v. Gillespie, 110 Penn. St. 89.

To ascertain whether the above mentioned instruction was correct, we must bear in mind the purpose of the interrogatory, which was to learn whether or not the appellant was afflicted with any malady or symptoms likely to shorten life.    The insurance company could have had no object in learning McDermott had a transient or slight indisposition, such as a headache or cold, and could have derived no benefit from such information.    It was endeavoring to find out the state of his constitution and general health in order to calculate his probable longevity and thereby settle whether he was a good risk.    The natural conclusion from the question itself is, that the information sought to be elicited was of that character; and such was the purpose of the other questions, of which there were a large number.    The interpretation usually given by the courts to similar questions in applications for insurance is like the one suggested.

In Cushman v. Life Ins. Co., 70 N. Y. 72, the applicant was asked if he had had any disease of the liver and answered that he had not.    It was, however, shown he had had congestion of the liver in a slight form during five or six days on two occasions before the policy was taken out and this proof was insisted on to annul the contract.    In dealing with the contention the Supreme Court of New York said:

"In construing contracts words must have the sense in which the parties used them, and to understand them as the parties understood them, the nature of the contract, the objects to be attained, and all the circumstances must be considered.    By the questions inserted in the application, the defendant was seeking for information bearing upon the risk which it was to take, the

probable duration of the life to be insured. It was not seeking for information as to merely temporary disorders or functional disturbances, having no bearing upon general health or continuance of life. Colds are generally accompanied with more or less congestion of the lungs, and yet in such a case there is no disease of the lungs which an applicant for insurance would be bound to state. So, most, if not all persons will have at times congestion of the liver, causing slight functional derangement and temporary illness, and yet in the contemplation of parties entering into contracts of life insurance, and having regard to general health and the continuance of life, it may safely be said that in such cases there is no disease of the liver. In construing a policy of life insurance it must be generally true that, before any temporary ailment can be called a disease, it must be such as to indicate a vice in the constitution, or be so serious as to have some bearing upon general health and the continuance of life or such as according to common understanding would be called a disease; and such has been the opinion of text-writers."

The doctrine and the language of this New York case are adopted as a correct enunciation of the general rule by a commentator on the subject. 1 Bacon on Benefit Ass'ns (2 Ed.), sec. 234.

A leading case on the proposition is Moulor v. Life Ins. Co., 111 U. S. 335, in which the insured was asked if he had had certain diseases which he denied ever having, and there was evidence tending to show he had been afflicted with some of the diseases. It was ruled that if he was in apparently sound health and answered in good faith, the answers were true according to the intention of the questions and that the policy was not void, although he then had some of the diseases inquired about in an inappreciable form without being conscious of the fact. To the same effect are Goucher v. Traveling Men's Ass'n, 20 Fed. 596; Manhattan Ins. Co. v. Carter, 82 Fed. 986; Conn. Mut. Life Ins. Co. v. Union Trust Co., 112 U. S. 257.

In Metropolitan Life Ins. Co. v. McTague, 49 N. J. L. 587, it was decided that a policy was not forfeited because the insured stated that he had not been sick nor afflicted with any disease, though in truth he had had a cold. The opinion said: "These terms are not to be construed as importing an absolute freedom from any bodily ailment, but rather of freedom from such ailments as would ordinarily be called disease or sickness."

In Goucher v. Traveling Men's Ass'n, supra, it is said: "The term 'good health' as here used does not import a perfect physical condition. It would not be reasonable to interpret it as meaning absolute exemption from all bodily infirmities or from all tendencies to disease. It can not mean that a man has not in him the seeds of some disorder. As has been remarked by some of the law-writers, such an interpretation would exclude from the list of insurable lives a large proportion of mankind. The term 'good health' as here used is to be considered in its ordinary sense and means that 'the applicant was free from an apparent sensible disease or symptoms of disease by which health could be tested.' Slight, unfrequent and transient disturbances not usually ending in serious consequences may be consistent with good health as that term was here employed."

We perceive from the third instruction given at the instance of appellant that the trial court held that McDermott's answer to the question whether he was of sound body, mind and health and free from disease and injury must have been literally true or there could be no recovery on the certificate; while we perceive from the second instruction given at the instance of respondent that the court also held a temporary indisposition not tending to weaken the constitution, although present at the time the application was signed, did not falsify the answer. In other words, that although the applicant had some slight temporary ailment, he could say with literal and exact truth he was free from disease within the meaning of the interrogatories addressed to him;

and we think that, according to the cases on the subject, those charges were accurate.

(b) We will next consider the effect of the negative answer to the inquiry whether McDermott had been treated by or consulted a physician in regard to any personal ailment within seven years preceding his application for insurance, in connection with the conceded facts that he had consulted a physician on two occasions in the previous month and the physician had prescribed for him for what was thought to be a fit of indigestion. As to the effect of those facts on the contract, the jury were instructed that merely calling at a doctor's office for medicine to relieve a temporary indisposition, not serious in its nature, or consulting a doctor about some trivial indisposition, did not fall within the purview of the question nor constitute a breach of the warranty. An instruction was refused to the effect that if the jury believed McDermott's answer to that question was not full, complete and literally true, then the plaintiff could not recover and it was immaterial whether the ailment for which he consulted the physician was slight or serious or merely temporary. The object of this question was very different from the object of the one relating to McDermott's state of health and the information sought to be elicited by it was not so much the diseases he might have been treated for, as the names and addresses of physicians whom he had consulted or who had prescribed for him, with the purpose of making further investigation as to the condition of his health.

The question demanded the names of such physicians, whether they had been consulted in regard to a serious or a trivial complaint, and the name of any physician McDermott had consulted within seven years should have been given, even though the ailment for which he sought relief was slight.

In Aloe v. Life Ass'n, 147 Mo. 561, the Supreme Court said:

"It was shown by several physicians who testified on the part of defendant on the trial that the statements

made by Aloe in his application for insurance that he had not consulted or been treated by a physician in thirty years, were untrue. The object of this inquiry suggests itself. If he had not consulted or been treated by a physician during that time, that was the end of it. But if he had consulted a physician or been treated by one during that time, the defendant had the right to know it, by whom and what for, so that it might ascertain the particulars from him. U. B. Mutual Aid Society v. O'Hara, 120 Pa. St. 256.

"It has been repeatedly held that such questions called for important information which the assured was bound to give truthfully." And the plaintiff was nonsuited for that and other false answers made by the deceased.

The argument of the respondent in this connection is that because the words "personal ailment" were used, the question must be interpreted to mean a physician was consulted for some grave illness or complaint, thus erroneously applying to this interrogatory the same rule of interpretation applied to the one above discussed. The natural significance of the words "personal ailment" is not serious illness but an ailment affecting McDermott himself, and of the question embracing those words, whether McDermott had consulted a physician for some ailment of his own; not one troubling a member of his family or other person. That the purpose of the question was not to find out whether he had any serious illness within seven years, but to get the names of any physicians whom he had visited professionally, is further shown by the circumstance that the application contained specific inquiries as to whether McDermott had had any grave diseases, such as rheumatism, smallpox, rupture, abscess, apoplexy, pneumonia—almost the entire list of ordinary diseases was covered by the questions propounded. We think, therefore, a clear breach of warranty was committed by McDermott's answering that he had not consulted or been treated by a physician within seven years, when in fact he had both consulted and been treated by one within a few weeks of the time

he made the answer; and this breach existed none the less if McDermott was in truth only slightly ill at the time. He consulted a physician and the latter gave him a prescription for a personal ailment, as that word is defined and commonly understood.

"Ailment" is defined in the Century Dictionary as "Disease; indisposition; morbid affection of the body; not ordinarily applied to acute diseases;" in Webster's Unabridged Dictionary, as "Indisposition; serious affection of the body; not ordinarily applied to acute diseases;" and by Worcester as "Pain; disease; illness."

It is impossible to say, considering the fact that McDermott died within a few months of cancer of the stomach, or at least of a malignant tumor thought to be an offshoot of cancer of the stomach, that the ailment he was treated for in February was not the beginning of his fatal malady—expert physicians were unable to say whether it was or not; which shows the importance of a strictly true answer to the interrogatory. Similar warranties were held to have been broken in many cases by answers like McDermott's; or even by answers which purported to state the names of the physicians who had attended the applicant but by mistake or design failed to do so; and while the decisions are not altogether uniform, the great preponderance of authority is in favor of that construction of insurance agreements.

In Life Ins. Co. v. McTague, supra, though a representation that the insured had not "been sick or affected with any disease" during the period the policy sought to be renewed was suspended was held not to be falsified by the fact that he had a cold, the statement that he had not, during said period "consulted or been prescribed for by a physician" was held to be falsified by his being treated by a physician for the cold. The court said:

"That representation did not aver a condition of health or that it was requisite or proper to consult a physician. It averred that he had not consulted a physician or been prescribed for by a physician. The fact found contradicted this averment, whether the consulta-

tion and prescription related to a real disease or an apprehension of disease. Indeed, so material does such a representation seem to be to the contract proposed by the application that, in my judgment, if made falsely and knowingly, it would avoid the contract. But the materiality of the representation in this case is not in question, for, as we have seen, its truth is warranted. Its falsity appears from the fact found.''

In Caruthers v. Mut. Life Ins. Co., 108 Fed. 487, the inquiry as to whether the insured had suffered from a serious illness was ruled to have been truly answered, though the insured had had chills and fever, as the trial court found said illness was not serious, the word ''serious''importing ''a grave, important and weighty trouble.'' But the insured was requested to give the name and address of each physician consulted or who had prescribed for him during the last five years and gave the name of but one, whereas several others had treated and prescribed for him and the omission of the names was held fatal, the court saying:

''The importance to the company of being advised of the names and addresses of all the physicians who attended the applicant for insurance within a limited time, and thus enable it to obtain by inquiry such information as it may deem of importance to the determination of whether the risk should be accepted, is fully demonstrated by the facts in this case. Dr. Shinault, who was the only physician named in the application as having attended the insured within five years, but who did not attend him during his illness in 1899, testified that that attack of hematuria did not in any way affect the general health of the assured; while on the other hand, Dr. Russworm, who was the physician who had attended the assured during that illness, but whose name was not mentioned in the application, testified that: 'I don't think a man is ever the same after having a severe attack (of hematuria). It makes an inroad upon the system, so a man is not the same he was before he had an attack.' He also testified that 'the attack

from which the assured suffered was a very severe attack of hematuria.' ''

In the present case the importance of a correct answer to the inquiry about physicians consulted is demonstrated by the probability or chance that when McDermott was treated in February for indigestion and stomach trouble he really had incipient cancer.

In Cobb v. Benefit Ass'n, 153 Mass. 176, it was said:

''The sixth question put to the applicant in form A of the application was, 'Have you personally consulted a physician, been prescribed for, or professionally treated, within the past ten years?' To this question the insured answered, 'No,' and it has been found by the jury, upon the second issue submitted to them, that this answer was false. The plaintiff contended that such an issue should only be found against her in case the answer was intentionally false. In our view, the insured having made the truth of his statements the basis of his contract, it was sufficient for the defendant to show that this statement was actually untrue.

''The plaintiff further contended, that the question referred to in the application should be construed as referring to a specific disease, and that if the insured had consulted or been prescribed for by a physician for a pain that did not amount to a disease, his answer to this question would not prevent the plaintiff from recovering. The presiding judge declined to instruct the jury in accordance with this contention, and instructed them that if the insured, being as he supposed in need of a physician, went to one for the purpose of consulting him as to what was the matter with him, and had an interview, answering such inquiries as the physician deemed pertinent, receiving aid, advice, or assistance from him, that the insured consulted a physician within the meaning of the interrogatory; and further, that if they found that he went to a physician for the purpose of procuring aid and assistance from the physician as such, and the physician prescribed a remedy, or treated him professionally either by giving him a prescription

or by administering hypodermic injections of morphine (of which there was some evidence) then he was professionally treated within the meaning of the interrogatory, or professionally prescribed for. The ruling appears to us correct. While the question whether the insured had a fixed disease, and what the disease was, might be an inquiry involved in considerable embarrassment, the question whether he had consulted a physician, or had been professionally treated by one, was simple, and one about which there could be no misunderstanding. Had it been replied to in the affirmative, the answer would have led to other inquiries. Indeed, the question which follows, which remained unanswered is, 'If so, give dates, and for what diseases.' It is upon the existence of this latter question that the plaintiff founds an argument that it was necessary to show that the insured had some distinct disease permanently affecting his general health before it could be said that he answered this question untruthfully. But the scope of the question can not be thus narrowed. Even if the insured had only visited a physician from time to time for temporary disturbances proceeding from accidental causes, the defendant had a right to know this, in order that it might make such further investigation as it deemed necessary. By answering the question in the negative, the applicant induced the defendant to refrain from doing this.''

In Life Assurance Society v. Reutlinger, 58 Ark. 528, after discussing the scope of inquiries touching the state of health of an applicant for insurance and ruling that, though such inquiries are made in language that will include the most trivial ailments, still, in consideration of their purpose, they will, if possible, be interpreted to embrace only such diseases or injuries as affect the risk assumed, the court held that a different interpretation must be put on inquiries regarding medical attendance. The lower court had given an instruction like one given in this cause, to the effect that calling on a physician for a temporary ailment or indisposition did

Vol 97 app—42.

not falsify the statement that the insured had never been treated by a physician made in answer to the question: "When and by what physician were you last treated and for what complaint?" In discussing that instruction the Supreme Court said:

"The court evidently attempted to enforce the rule we have stated, but erred as to the purpose and meaning of the question, and in so doing, misapplied the rule. In the application of Reutlinger the following clause appears: 'All provisions of law forbidding any physician who may have attended me from disclosing any or all information which he acquired by such attendance are hereby expressly waived.' In his examination by the medical examiner he was asked the question: 'Have you ever had any serious illness or personal injury, or ever undergone any surgical operation?' He answered 'No.' He was asked if he ever had any one of forty-seven different diseases, and he answered 'No.' After this he was asked to give the name and residence of his medical attendant and he answered that he had no physician. He was then asked, 'When and by what physician were you last attended and for what complaint?' To which he answered, 'Never called a doctor in his life.' In the last mentioned interrogatory two questions were combined in one: (1) he was asked, 'When and by what physician were you last attended?' (2) 'If so, for what complaint?' The object of asking 'for what complaint' was not to ascertain if he ever had any serious illness or personal injury. He had already answered a question propounded for that purpose in the negative. If such had been the object, it was wholly unnecessary to ask, in connection with it, 'When and by what physician were you last attended?' The question takes for granted that if he had been attended by a physician, it was in a case of sickness; and the words 'for what complaint' were added to ascertain what the sickness was, without regard to its being serious or trivial, and to show what kind of attendance of a physician was referred to. The obvious purpose of it was to ascertain the name of a person from whom informa-

tion affecting the risk of insuring the life of Reutlinger could be derived. In furtherance of this purpose he had agreed in his application that any physician who had attended him might disclose any or all information which he acquired by such attendance. The answer given, if it be correctly written, clearly indicates that Reutlinger so understood the question. It did not aver a condition of health, or that it was not requisite or proper to request the attendance of a physician. It averred that he had never called a physician to attend him in sickness. He warranted this statement to be true, and the evidence adduced at the trial of this case tended to prove that it was untrue—a breach of warranty."

That reasoning applies forcibly and accurately to the case in hand; for the questions involved were practically identical, there being no material difference between the word "complaint" as signifying illness, and "ailment," while the other interrogatories contained in the two applications were about the same, as was; also, the waiver of the right to claim a privilege as to the testimony of any physician the applicant had consulted.

In Phillips v. Life Ins. Co., 9 N. Y. Supp. 836, the insured, instead of giving the name of the physician who had treated him, gave the name of one who usually treated his family, whereas he himself had been treated by another physician; and this was held a breach of warranty because the question called for the name of the doctor, the date of treatment and for what the services were required.

In Modern Woodmen v. Van Wald, 49 Pac. 782, the question was, had the defendant consulted a physician in the last seven years; which, of course, meant for a personal ailment; for no one would contend that consulting a physician on any other subject would be a breach of warranty. The insured answered in the negative and the trial court instructed the jury that the question must be taken to mean a consultation about some indisposition of an apparently grave character and that an inquiry regarding a trivial or merely tem-

porary ailment was not intended. As to that charge the appellate court said:

"This is importing into the contract a condition not put there by 'the parties. The defendant company had a right to know truthfully whether the deceased had consulted a physician for any purpose, whether the consultation was with regard to some grave indisposition or a slight ailment. The question was, 'Have you consulted a physician?' It was for the company to know. They had a right to inquire themselves with regard to the matter, whether it was a grave indisposition, a serious illness, or a slight ailment, before entering into the contract. The answer gave them no opportunity to do so. The literal, exact truthfulness of the answer was made a warranty in the contract upon which it was based. It was so agreed in the body of the contract."

In Life Ass'n v. McDaniel (Me.), 57 N. E. 695, the applicant stated that he had not consulted a physician within a certain period, which was untrue; but it was contended that because the disease and the treatment left no vice in his constitution the company was not exonerated from liability. The court said:

"We think it may be conceded that the concealment of the fact that the insured had had a cold which yielded readily to treatment was not a misrepresentation of a material fact, but under the decisions we are of the opinion that a statement of the insured in his application that he had not been attended or treated by a physician was a misrepresentation of a matter not material to the risk."

In Society v. O'Hara, 120 Penn. St. 356 (approvingly cited by our Supreme Court in the Aloe case), it was said:

"If specific inquiries are made whether insured had medical attention within a stated period of time, the fact is thereby made material and must be disclosed."

Where the inquiry was "How often has medical attention been required?" and the answer was "Two years ago" and the name of the physician being asked, the insured gave the name of one doctor who had treated

him a year before; but omitted to state another who treated him during a dangerous relapse, the policy was held void, though no fraud was intended. Cazenove v. Assurance Co., 29 Law J. (N. S.) Com. pl. 160.

When the applicant said he had not consulted a physician since childhood and did not remember the names of doctors who had treated him, but he had in fact consulted one within two years and knew his name, the warranty was broken. Insurance Company v. Arhelger, 36 Pac. 895.

Where the applicant was called on to give the name and address of each physician who had attended him within a stated period and he gave the name and address of one, but had been attended by two others, the answer was held untrue and the policy vitiated. Brady v. Life Ass'n, 60 Fed. (C. C. A.) 727.

In Sladden v. Life Ins. Co., 86 Fed. 102, the applicant said she had had no physician, but she had in fact been treated by one within two months and this was held fatal.

"Neither would the untruthfulness of the answer in respect to Dr. Ingalls have been mitigated if it had been shown that the medical examiner told Mrs. Sladden that he did not wish her to mention any slight cold or accident she may have had, and the physician whom she had consulted, and that she should answer only grave and serious matters. The impropriety not to say absurdity, of permitting an applicant for insurance to determine what matters of health, which at the time were deemed grave enough to go to a physician about, were too slight and unimportant to mention to a medical examiner when applying for insurance, could not well be emphasized more strongly than by the facts of this case."

Decisions similar to the foregoing will be found in White v. Society, 103 N. Y. 341; Life Ins. Co. v. Llewellyn, 58 Fed. 940; Schwarzbach v. Protective Union, 25 W. Va. 622; Geach v. Ins. Co., 20 N. Y. 293.

More or less opposed to the views expounded in the cases above mentioned are the following authorities:

Brown v. Ins. Co., 65 Mich. 306, and other cases in that State; Life Ass'n v. Ogletree (Miss.), 25 Southern 869 (a case of misrepresentation, not of warranty); Woodward v. Life Ins. Co. (Tenn.), 56 S. W. 1020; Billings v. Ins. Co., 41 Atlantic (Vt.) 516. In the last case the names of some physicians who had treated the insured were not given, but it was held the interrogatories were so framed that he had a right to assume they were not called for.

We regard some of the latter decisions as either losing sight of the object of such questions or, in effect, abrogating one part of the contract of insurance.

It is of course to be noticed in all cases not only what the terms of the question are, but also whether the answer to it was a misrepresentation or a warranty and, hence, whether the simple fact that the answer was not literally true was sufficient to avoid the policy.

Finally, we refer to the rule declared by the Supreme Court of Missouri, that when the parties to a contract of insurance have provided that statements made to obtain the policy are warranties, their falsity avoids the contract whether they were material or not, unless the contract falls within the exemption that misrepresentations must contribute to the loss to have that effect. Whitmore v. Supreme Lodge, Hanford v. Ass'n, Jacobs v. Ass'n, Aloe v. Ass'n, supra; Hayne v. Knights Templars, 139 Mo. 416.

In the Aloe case, the subject was extensively treated and our Supreme Court, speaking by Judge BURGESS, approved the following proposition declared by the Supreme Court of Maine:

"We do not think any court in the absence of a modifying statute has gone to the extent of expunging from a contract or disregarding in its construction any statement or item which the parties distinctly and in terms agreed should be regarded as material and essential to the contract."

In our opinion McDermott's contract as a whole, including the certificate and also his application with its questions and answers, can not reasonably be inter-

preted to call for information as to physicians who had treated him only for grave illnesses, leaving him to decide in the first instance and the jury in the last, whether his ailment was grave or not. The second part of the question asking for dates, the ailment treated and the name and address of the physician, and also the other interrogatories about serious diseases, exclude such an interpretation, which would defeat the purpose of the inquiry.

As to the argument that it is impossible for a person to remember the names and addresses of physicians who treated him for small ailments during seven years, and that a contract should not be so interpreted as to require an impossibility, we say that courts are bound to interpret the language of agreements in its usual sense. It may be impossible for one to recall the names and addresses of all physicians whom he consulted during seven years for serious as well as for slight ailments; but neither fact is such an absolute impossibility as to be excluded by law from the list of things about which agreements may be made. When parties *sui juris* make hard but permissible contracts, courts can not decline to enforce them, as has been said numberless times. If an application for insurance calls for events of which the remembrance is uncertain, the applicant should so state. In this case, however, there can be little doubt that McDermott remembered visiting or being visited by his doctor in February. As it is conceded he misstated the fact and as the answer was a warranty, the judgment is reversed. *Bland, P. J.,* and *Reyburn, J.,* concur.