# COMMERCIAL BANK, a Corporation, Respondent, v. AMERICAN BONDING COMPANY, a Corporation, Appellant.

### Springfield Court of Appeals, June 26, 1916.

1. **APPELLATE PRACTICE: Finding of Referee: When Conclusive.** Where a case has been referred to a referee and he has made a finding on the issues supported by the evidence, such finding as to such issues is conclusive on the Court of Appeals.

2. **BONDS: Indemity Bonds: Contracts: Statutes.** Secs. 7024, 7026, R. S. 1909, relating to the construction of warranties of fact and Sec. 6937, R. S. 1909, relating to misrepresentations, do not apply to contracts covered by indemnity bonds.

3. **INSURANCE CONTRACTS: Warranties: Materiality.** Warranties must be absolutely true whether material to a risk or not and a warranty is a part and parcel of a contract.

4. ———: ———: **Renewal of Policy.** A renewal of an insurance policy constitutes a separate and distinct contract for the period of time covered by such renewal.

5. ———: ———: ———: **Renewal Receipt.** Where the renewal receipt recites a renewal in accordance with the terms of an indemnity bond, it is a contract with the same terms as shown by the renewal.

6. ———: **Indemnity Insurance: Warranties: Renewals.** The original warranties in an indemnity bond run through any renewal and where a bond is renewed the company has a right under the terms of the contract to show that any statements in the original application for the bond were untrue. This does not mean, however, that such statements are promissory covenants or warranties which will render the bond void if the conditions existing between the employee and employer become changed.

7. ———: ———: **Representations: What Not Warranties.** In a renewal receipt on a fidelity bond the insured stated that the employee was not then in default, that he had faithfully, honestly and punctually accounted for all moneys and property and always had proper securities, property and funds on hand to balance his accounts, and these statements were not made a warranty by any terms of the contract. The statements were representations merely and not warranties.

8. **CONTRACTS: Warranties and Representations: Difference Between.** Representatives are not part of a contract as warranties are. They are inducements to a contract merely and not facts contracted to be true.

Commercial Bank v. American Bonding Co.

9. ——: ——: Material Representations. A representation does not have to be literally true as does a warranty. But a representation which is material to the risk and which is falsely or fraudulently made will avoid the contract.

10. INSURANCE: Indemnity Insurance Warranties: Representations. A distinction between a fact which is warranted to be true and one which is represented to be true is that in the case of a warranty the statement must be true whether material to the risk or not, whereas in the case of a representation, the fact stated, although material to the risk, if made in good faith, will not, because the statement is untrue, render the contract which was induced by such statement void or voidable.

11. ——: Insurance Contracts: Distinction Between Representations and Warranties as to Avoiding Policies. In order to avoid an insurance policy on the ground of false representations, the answer must be false from a corrupt motive. But that a warranty may render such policy void it is only necessary that the answer be false in fact.

12. ——: ——: Bonds of Indemnity: Representations: When Contract Not Rendered Void. Action on indemnity bond. The bond provided that all representations made by the employer to the surety were warranted to be true. In the renewal receipt the employer stated that the employee had not to the employer's knowledge, been in default in any particular covered by the bond, that he had faithfully accounted for all moneys in his custody and was not in default. The employee was in default at the time but none of the officers of the insured bank knew or had reasonable ground for knowing this fact. *Held* that the statements were not made recklessly but that the employer honestly believed them to be true. The fact that they were untrue would not defeat the renewal bond.

Appeal from New Madrid County Circuit Court.—*Hon. Sterling H. McCarty,* Judge.

AFFIRMED.

*Everett Reeves* for appellant.

*John A. Hope* and *Riley & Riley* for respondent.

FARRINGTON, J.—The plaintiff (respondent) recovered a judgment for the full penalty of an indemnity bond and the defendant appealed.

194 M, A.—15

Walter L. Meier, a bookkeeper in the employ of the plaintiff bank at New Madrid, Mo., was required in October, 1907, to give a bond to cover any defalcations or embezzlements. This bond was bought of and signed by the defendant. In the application for the bond were certain questions asked the president of the bank which he as such answered in writing and signed, among which are the following:

"5. Is the applicant now, or has he been from any cause, indebted to the bank or its officers? If so, give particulars, stating amount, how incurred, and how payment is secured? Answer: No."

"6. (a) Is the applicant now or about to be engaged or interested in any other business or employment other than in the bank's service? Answer: No."

"12. (a) Has applicant always faithfully, honestly and punctually accounted to you for all moneys and property heretofore under his control or custody as your employee? Answer: Yes. (b) Are applicant's accounts at this date in every respect correct and proper securities, property and funds on hand to balance his accounts? Answer: Yes."

Immediately after these and other questions and answers in the application the following appears:

"It is agreed that the above answers shall be warranties and form a part of and be conditions precedent to the issuance, continuance or any renewal of or substitution for the bond that may be issued by the American Bonding Company of Baltimore in favor of the undersigned upon the person above named."

The bond was renewed each year before the issuing of a renewal receipt, and before each renewal receipt was issued the cashier of the bank made the following written statement:

This is to certify, that since the issuance of the above bond, Mr. Walter L. Meier, hereinafter called employee, has faithfully, honestly and punctually accounted for all moneys and property in the said employee's control or custody as my or our employee, has always had proper funds and securities on hand and is not now in default as such employee."

Each renewal receipt provided:

"In consideration of the sum of twelve and 50/100 dollars, American Bonding Company of Baltimore hereby continues in force its surety bond No. 282440 for the fidelity of Walter L. Meier, in favor of the Commercial Bank, New Madrid, Missouri, from the fourth day of October, 1908, to the fourth day of October, 1909 (dates being appropriate, of course); in the penalty of five thousand dollars, covering the same position and subject to all the covenants and conditions set forth and expressed in said bond heretofore issued by this company on the 17th day of October, 1907."

It is uncontroverted that at the times the renewal receipts were issued covering the defalcations and embezzlements allowed by the judgment of the trial court Meier was heavily overdrawn at the bank in sums ranging from one thousand to four thousand dollars which overdrafts were made by him without the knowledge or consent of the bank, and it is further beyond controversy that when such overdrafts were discovered Meier was told by the officers of the bank to reduce them. They were afterwards reduced and taken care of, being paid to the bank by friends of Meier who were also officers and stockholders in the bank. It is admitted that he owed the president of the bank who signed the original application several thousand dollars when the renewals on which the recovery was based were issued. It is a fact that Meier ventured in the automobile business and became indebted therein several thousand dollars, buying such business and giving his notes and a mortgage to secure the same to the man who was president of the bank and who signed the original application. It is also a fact beyond question that Meier had little or no property to stand good for his indebtedness which included the overdrafts and the individual indebtedness to officers of the bank, and that the fact of his indebtedness and the amount of property he owned were well known to the bank's officers. It appears that he became engaged in the picture-show business when these renewals were issued. His salary from the bank was one thousand dollars

per year. All his business ventures were failures, and he defaulted and embezzled from the bank between six thousand and seven thousand dollars—which he states was lost by him in gambling at a game designated in the record as "shooting craps."

The following admission was made during the trial:

"It is admitted that the plaintiff gave the defendant American Bonding Company no notice of any kind or character of the alleged overdrafts, defaults, errors, embezzlements, or any other misconduct of Walter L. Meier in his employment with the Commercial Bank, prior to W. H. Garanflo's letter dated November 8, 1912, which has been offered in evidence, and that no other notice than the notice and proof of loss heretofore offered in evidence in this case by the plaintiff was ever given to the defendant American Bonding Company."

The bond contained the following provisions:

"15. This bond is made, issued and accepted or renewed upon the following conditions:

"1. This bond shall not lapse at the end of the above time if it shall be continued in force by a renewal receipt or receipts, executed by the surety, but shall continue in force for the term or terms of such renewal. The liability of the surety, however, shall not be cumulative.

"2. That all the representations made by the employer, his or its officers, to the surety are warranted by the employer to be true; that the employee has not to the knowledge of the employer, his or its officers, been in arrears or a defaulter in the position covered by this bond or in any other position; . . ."

A number of defenses were set up by the defendant, including the knowledge of the officers of the bank as to Meier's gambling, the question of the good faith of the bank's officers in relation to the overdrafts, the failure on their part to notify the defendant of these overdrafts, the failure on their part to properly investigate the books and accounts of Meier, and the failure on their part to use ordinary diligence to discover the false charges and actual embezzlements that took place.

The case was referred to a referee who found all the issues as to good faith, knowledge, and the like, in favor of the bank, and, there being evidence to support such findings, this disposes of these questions here. [Lackland v. Renshaw and Surety Co., 256 Mo. l. c. 152, 165 S. W. 314.] He found that Meier had embezzled $6013.69 between November 27, 1911, and October 9, 1912, the false charges on the books being twenty-one in number and ranging in amount from $55 up to $1000. The finding of the referee treated of Meier's overdrafts, debts, and ventures into other business in this fashion: "I do not find that the bank was prohibited from making loans to Meier or to his auto company, or to his picture-show company, nor was Meier deprived of the right to engage in other business under his contract with the bond or with the bank."

Sections 7024, 7026 and 6937, Revised Statutes 1909, do not cover this character of contract and as was held in Pacific Mutual Ins. Co. v. Glaser, 245 Mo. l. c. 386, 150 S. W. 549, this section was not intended to restrict the freedom of contract except in those instances falling within its provisions.

This case is to be governed by the general law of contracts. That general law is well settled and is that a warranty is "parcel of the contract" (Salts v. Prudential Insurance Co., 140 Mo. App. 142, 120 S. W. 714), and that warranties must be absolutely true whether material to the risk or not. [Aloe v. Mutual Reserve Life Ass'n, 147 Mo. 561, 49 S. W. 553; Pacific Mutual Life Ins. Co. v. Glaser, supra; Krey Packing Co. v. U. S. Fidelity & Guar. Co., 189 Mo. App. l. c. 598, 175 S. W. 322; Lyons v. National Surety Co., 243 Mo. 607, 147 S. W. 778; Guarantee Company of North America v. Mechanics' Savings Bank & Trust Co., 183 U. S. 402, 46 L. Ed. 253; McDermott v. Modern Woodmen of America, 97 Mo. App. 636, 71 S. W. 833.]

It is held in Long Brothers Grocery Co. v. U. S. Fidelity & Guar. Co., 130 Mo. App. l. c. 430, 110 S. W. 29: "The rule is generally recognized that 'a renewal of a policy constitutes a separate and distinct contract for the period of time covered by such renewal. It is,

however, a contract with the same terms and conditions as is evidenced by the bond which is renewed, because the renewal receipt recites that it is renewed in accordance with the terms of the bond.' [DeJernette v. Fidelity & Casualty Co. of N. Y., 33 S. W. 828; Railroad v. American Surety Co., 99 Fed. 674; Insurance Co. v. Walsh, 54 Ill. 164; Brady v. Insurance Co., 11 Mich. 425.]'' The opinion (continuing) holds that the only warranties on which the company could be held to rely are those contained in the original application as modified or changed in a subsequent application for a renewal.

In our case there is no evidence whatever that at the time the original application was made there were any of the statements which were warranted to be true which were false or untrue. The bond nowhere makes the statements made in the application for a renewal *warranties,* and as the bond is not cumulative but on a renewal liability thereon is extended not only over defalcations made within the first year but also during the renewal period, the penal sum named therein being the full extent of the company's liability, it can be readily seen that the consideration given by the company for the premium on a renewal is less than the consideration given for the first year a bond is issued. It is true that the original warranties run through any renewal, which means that where a bond is renewed the company has a right, in case demand is made on it, under the terms of the contract, to show that any statements in the original application made for the bond were untrue, but this does not mean that such statements are promissory covenants or warranties which will render the bond void if the conditions existing between the employee and his employer become changed.

The bonding company in this case did issue a renewal receipt and thereby renewed its contract, but before doing so it required a statement which it prepared and requested the cashier to sign, making only the assertion that the employee had faithfully, honestly and punctually accounted for all moneys and property and always had proper securities, property and funds

on hand to balance his accounts, and was not then in default. This statement, as said before, was not made a warranty by any of the terms of the contract before us and can therefore be considered only as a representation. And on examining the bond it will be seen (in section 2 hereinbefore copied) that the representation was "that the employee has not to the knowledge of the employer, his or its officers, been in arrears or a defaulter in the position covered by this bond or in any other position." The renewal certificate required by the company was practically a reiteration of that clause of the original bond. We therefore hold that the statements made in the renewal certificate were by the terms of the agreements between the parties nothing more than representations and not warranties.

This being true, it becomes important to view the question from the standpoint that such representations made in the renewal certificate were in fact false and untrue because at that time Meier was in arrears and was a defaulter as the amount sought by the plaintiff in its petition discloses.

The law is well settled that representations are not a part of the contract in the sense that warranties are; that is, they are inducements to a contract but not facts which are contracted to be true. It is also settled that a representation does not have to be literally true as does a warranty. However, a representation which is material to the risk—and we hold that the representation made in this case was undoubtedly material to the risk—and which is falsely or fraudulently made will avoid the contract.

There is yet another distinction to be noted between a fact which is warranted to be true and one which is represented to be true, and that is that in the case of a warranty the statement must be true whether material to the risk or not and must also be true in fact (Aloe v. Mutual Reserve Life Ass'n, 147 Mo. 561, 49 S. W. 553; McDermott v. Modern Woodmen of America, 97 Mo. App. 636, 71 S. W. 833; Krey Packing Co. v. U. S. Fidelity & Guar. Co., 189 Mo. App. l. c. 598, 175 S. W. 322), whereas, in the case of a rep-

resentation, the fact stated, although material to the risk, if made in good faith, will not, because the statement is untrue, render the contract which was induced by such statement void or voidable.

Joyce on Insurance, Vol. 2, sec. 1884, p. 1875, defines a misrepresentation as follows: "A misrepresentation in insurance is an oral or written statement made by the assured or his authorized agent to the underwriter or his authorized agent of something as a fact which is untrue, is known to be untrue, and is stated with intent to mislead or deceive, or which is stated positively as true without its being known to be true, and which has a tendency to mislead, such statement relating in both cases to material facts."

Bacon on Benefit Societies and Life Insurance (3 Ed.), Vol. 1, sec. 234, p. 512, states this to be the rule: "The rule, therefore, is that, where the answers to questions in the application are representations, the death of the applicant from a latent disease, which existed at the time of the application, but unknown to the applicant, he answering all questions in good faith, will not avoid the policy. But, where the answers are warranties, then the death of the applicant from a latent disease, which existed at the time when he warranted himself to be free from it, will avoid the policy."

In the case of McDermott v. Modern Woodmen of America, 97 Mo. App. 1. c. 646, 71 S. W. 833, Judge GOODE recognizes the distinction between a warranty and a representation as to good faith, holding in effect that in order to avoid a policy on a false representation the answer must be false from a corrupt motive, while on a warranty it is only necessary that the answer be false in fact.

25 Cyc. 801, following certain cases cited, declares that a misrepresentation of a material matter will avoid a policy although not fraudulently made; but this is qualified by stating that questions which are propounded in the application call for answers founded on knowledge or belief of the applicant and that a misstatement not knowingly made and not made with intent to deceive will not avoid the policy. Also (p. 802), that

if the language of the policy and application reasonably indicate to the assured that his statements are to be as to his honest belief, such stipulations will not be construed as amounting to a warranty.

Turning to the contract in our case, as before pointed out, there were none of the statements which were warranted in the original application shown to have been false. Those same questions and answers were not carried forward at each renewal period but only the questions as to whether Meier had faithfully accounted for all moneys and property and had proper securities, property and funds on hand to balance his accounts and was not in default, were asked by the company and answered by the cashier. The bond, under section 15, subsection 2, only held the employer to a *knowledge* of the employee being in default or in arrears; and as the evidence taken before the referee did not disclose that any of the bank's officers knew or had reasonable ground for knowing at the time the certificate for a renewal was made that Meier had not faithfully, honestly and punctually accounted for all money and property, or that he had not proper securities, property and funds on hand to balance his accounts, or that he was in default, and as the finding of the referee was to the effect that none of the bank's officers had knowledge of the falsity of these facts which were stated in the certificate for renewal, we hold, with him, that the misrepresentations were not known to the cashier making the statement and that he did not make it recklessly. The only statements shown to be false which were made by the bank's officers were those contained in the certificate of renewal. Such statements were not made warranties under the contract, and the finding of the referee, supported by evidence, is that these statements although false were unknown to the cashier making the certificate and that they were made in the honest belief that they were true. This will not defeat the bond. [See, Moulor v. American Life Ins. Co., 111 U. S. 335, 28 L. Ed. 447; Fidelity Mutual Life Ass'n v. Jeffords, 107 Fed. 402, 53 L. R. A. 193, l. c. 208, 209.]

The overdrafts were treated by the bank as indebtedness and were paid up. They are not connected in any way with the amount allowed by the referee and approved by the circuit judge in the judgment rendered. There was one overdraft which was unauthorized and which was known to the cashier at the time he made the renewal certificate. The overdrafts, however, were made by Meier in the operation of his automobile and picture-show business and were treated by the bank as debts and. not defalcations—and in fact they were debts and not misappropriations in the sense of embezzlements. The one overdraft above referred to, of $510, which was known to the cashier when he made the renewal certificate was included in plaintiff's suit for recovery. This is explained by the plaintiff's witnesses who say that after they found that Meier had defaulted and embezzled, they then included everything he owed in the suit on the bond. It was not allowed, however, by the judgment in the circuit court and there is no pretense that it constituted a theft or embezzlement.

The judgment is affirmed. *Robertson, P. J.,* and *Sturgis, J.,* concur.