## COPE, Appellant, v. WESTBAY et al.

**Division One, May 24, 1905.**

1. **BANKERS: Overdrafts: Personal Liability.** The president and cashier of a bank, authorized to make loans for it, are not answerable for losses happening through errors of judgment in making loans, if in doing so they exercised a reasonable degree of skill, care and diligence; they are not guarantors of the solvency of the person to whom the money is lent, nor personally liable for permitting overdrafts where the nature of the transaction is such that it is really a loan on sufficient security.

2. ————: ————: **Failure To Collect.** The mere fact that overdrafts have not been collected affords no ground for charging the president and cashier with a breach of their duty in permitting the overdrafts to be made if the person who made them was at the time entirely solvent and responsible.

Appeal from Jasper Circuit Court.—*Hon. Hugh Dabbs,* Judge.

AFFIRMED.

*Davis & Steele* and *A. W. Lyon* for appellant.

(1) The assets of the bank had all been sold by the assignee and it had no property with which to employ attorneys or to even pay a filing fee. A court of

equity never permits a wrong to go unredressed, merely for the sake of form. Wherever a cause of action exists primarily in behalf of the corporation, against directors or officers for wrongful dealing with corporate property, and the corporation either actually or virtually refuses to institute, or prosecute, such a suit, then, in order to prevent a failure of justice, an action may be brought and maintained by a stockholder. Hannerty v. Stand. Theatre Co., 109 Mo. 297; Slattery v. Trans. Co., 91 Mo. 217; Albers v. Mer. Exch., 45 Mo. App. 206. (2) Defendants, in paying and permitting the overdrafts, were guilty of a flagrant breach of duty and a gross violation of law, and there can be no question of their liability. Brown v. Bank, 33 L. R. A. 359; Williams v. McDonald, 7 Atl. 866; Dodd v. Wilkinson, 9 Atl. 685; Williams v. McKay, 18 Atl. 824; Marshal v. Bank, 2 L. R. A. 534; Brinckerhoff v. Bostwick, 88 N. Y. 52; Bank v. Wilcox, 60 Cal. 127; Stearns v. Lawrence, 83 Fed. 738; Lawrence v. Stearns, 79 Fed. 878; Bank v. Reed, 36 Mich. 263; 1 Morse on Banks and Banking (4 Ed.), sec. 147; Bank v. Hill, 148 Mo. 380. (3) It is clear that the bank released Stone from all liability on the overdraft indebtedness. 1 Bates on Partnership, sec. 497; Morgan v. Tarbell, 28 Vt. 498; Lime Co. v. Bank, 158 Mo. 272; Bank v. Booze, 75 Mo. App. 189; Miller v. Thorn, 56 N. Y. 402; McCune v. Belt, 45 Mo. 174; Goetz v. Piel, 26 Mo. App. 634; Kauffman Lum. Co. v. Christophel, 59 Mo. App. 80. (4) It is immaterial to plaintiff's right to recover whether Stone is liable for the overdraft or not, since respondents admit that it was an overdraft, a thing positively forbidden by law, and that it resulted in a loss to the bank of $3,400. (5) There are no laches in the case, such as to bar this suit. Bradshaw v. Yates, 67 Mo. 221; Spurlock v. Sproule, 72 Mo. 510; Lindell Real Estate Co. v. Lindell, 142 Mo. 61.

*R. H. Davis* and *W. Cloud* for respondent.

(1)   The record shows that the judgment dismissing plaintiff's bill was eminently proper, and this court should not reverse for error, if error it was, in refusing plaintiff's request for special findings. R. S. 1899, sec. 865; Cass County v. Bank, 157 Mo. 133; Land Co. v. Hays, 105 Mo. 143.   (2)   If the directors, or other officers, of the corporation commit breaches of their trust, the general rule is that the corporation itself is the proper party plaintiff to bring an action to redress the injury.   The right of action considered as a beneficial right resides in the aggregate body of the shareholders, and the action is prosecuted for the benefit of all of the shareholders.   As the corporation is the legal entity which represents all of the shareholders, the action is properly brought in the name of the corporation.   Albers v. Mer. Exch., 45 Mo. App. 218; Wallace v. Bank, 15 S. W. 449; Loomis v. Railroad, 165 Mo. 489; Meyer v. Hotel Co., 163 Mo. 59.   Exceptions to this general rule have been and are recognized, but "it is a settled principle of equity jurisprudence that, before a court of equity will open its doors to a single stockholder, although he comes, as he must, not only in behalf of himself but also in behalf of all other stockholders, to an inquiry into grievances of this kind, he must show that there is no other road to redress; and he does not show this, unless he shows that all remedies within the corporation itself have been exhausted."   Albers v. Mer. Exch., 45 Mo. App. 219; Slattery v. Transportation Co., 91 Mo. 217; 2 Pomeroy's Equity Juris., sec. 1095. The defendants Westbays being in the minority on the board, the majority could have prosecuted this action, or any other action deemed necessary. R. S. 1899, sec. 976; 6 Thomp. on Corp., sec. 7374.   The assignment of the corporate assets did not work a dissolution of the corporation, and the board of directors could have held such meetings as were necessary to transact the busi-

ness of the corporation.   5 Thomp. on Corp., secs. 6660,
6663, 6666.   (3)   Permitting an overdraft by the
cashier or directors is not negligence *per se* for which
they would be liable.   Boone on the Law of Banking,
sec. 197; Wallace v. Bank, 15 S. W. 542; 4 Thomp. on
Corp., sec. 4828; Wallace v. Bank, 15 S. W. 451; 3
the insolvency of Stone, but on account of the fact that
this overdraft was not lost to the bank on account of
the insolvency of Stone, but on account of the fact that
Stone refused to pay for the reason that the bank had
released him and had accepted the Roops.   If the bank
did not release Stone and accept the Roops as the prin-
cipal debtors, it cannot be claimed that the overdraft
was paid with the moneys deposited daily by the Roops,
and which were carried under the account of the old
management under Stone.   The system of keeping the
accounts of the old and new managements would not,
within itself, amount to payment.   To constitute pay-
ment, money or other valuable thing must be delivered
to the creditor by the debtor for the purpose of extin-
guishing the debt, and the creditor must receive it for
that purpose.   Land Co. v. Rhodes, 54 Mo. 459; Bank
v. Gray, 19 Barb. 459; Thompson v. Kellogg, 23 Mo.
285; 1 Beach on Cont., sec. 361.   It is a rule of law that
when an account is made up of different items, some
secured and others not secured, payments will be ap-
plied to the items not secured, if neither party makes
an application.   McMillian v. Grayston, 83 Mo. App.
432; Bank v. Riggs, 72 Mo. App. 239; Powlson v. Col-
lier, 18 Mo. App. 583; Lyons v. Carter, 84 Mo. App.
489; Price v. Merritt, 55 Mo. App. 640; Goetz v. Piel,
26 Mo. App. 634.

BRACE, P. J.—This is a suit in equity, by a stock-
holder, against the president and cashier of the Bank
of Monett, in which, upon the hearing, the plaintiff's
bill was dismissed and he appeals.

It appears from the evidence that on the 12th day of March, 1888, the Bank of Monett was duly incorporated and organized in the city of Monett in Barry county, with a capital stock of $25,000 fully paid up, divided into 250 shares of the face value of $100 each, of which James P. Westbay was the owner of 166 shares, Harry H. Westbay, 4 shares, B. F. Hobart, 76 shares, E. B. Loveland, 2 shares, and A. M. Longwell, 2 shares.

Upon the organization of the bank, James P. Westbay became a director and the president, and Harry H. Westbay became a director and the cashier thereof, and thereafter they continued to hold a majority of the stock, and to sustain these relations to the institution; the whole control and management of which, was entrusted to them by the stockholders and directors without any by-laws for their government, so far as the record in this case shows.

The bank immediately commenced business, prospered, made money and regularly declared dividends of 8 to 10 per cent upon its capital stock until the panic of 1893-4, when, like many of the institutions of its kind in this country, it became embarrassed by the depreciation in the value of its assets by that financial crisis, and in the latter part of the year 1894, or the early part of the year 1895, the State Bank Examiner took charge of the bank, and placed it temporarily in the hands of a receiver. The receivership continued, however, for a few days only, when the bank was restored to its officers and its management continued as before. At the annual meeting of the directors on the 14th of January, 1895, the last dividend of 10 per cent was declared and paid to the stockholders on their capital stock, and in May, 1896, in pursuance of a stockholder's meeting for that purpose, the capital stock was reduced from $25,000 to $12,500, by paying the stockholders 34 per cent on each share of stock, and deducting sixteen per cent from the capital for depreciation

in the value of the assets of the bank. Thereafter, the management of the bank continued as before until December, 1896, when it was placed in the hands of James P. Westbay as trustee to wind up its business. As such trustee he then took charge of its affairs and continued in the administration of its assets until May 24, 1897, when a general assignment for the benefit of its creditors was made to W. T. Marrs, who duly qualified as such assignee, took charge of the assets and continued in the administration thereof until September 20, 1897, when he resigned, and the said Harry H. Westbay was duly appointed assignee in his stead. In due course Harry H. Westbay administered the remaining assets, paid off all the obligations of the bank, and in April, 1899, made report thereof to the circuit court, and was discharged. It took all the proceeds of the assets of the bank to pay off its liabilities and expenses of administration, leaving nothing for the stockholders.

In May, 1893, the plaintiff, George Cope, purchased three shares of the capital stock of the bank and ever since has been the owner thereof. On the 13th of September, 1899, he instituted this suit against the said James P. and Harry H. Westbay, first having obtained without consideration from other stockholders, who were unwilling to unite with him in it, assignments of about seventy-five additional shares.

The petition is very voluminous, but, as is said in the brief of counsel for respondents, "pruned of all redundancies only two matters remain of which plaintiff complains and for which judgment is prayed, to-wit: the amount claimed to be due and unpaid on capital stock, and for an overdraft of the Monett Mill and Elevator Company." As to the first of these claims it is only necessary to say, that there is no evidence to support it. On the contrary, the evidence is clear and convincing that the entire capital stock of the company was paid up in full at the time of the organization of the

bank, and that James P. and Harry H. Westbay paid in cash, dollar for dollar, for every share of the stock that was issued to them, and every cent of the money therefor went into the coffers of the bank and there remained, subject to the vicissitudes of its business. There is no merit whatever in this claim.

As to the second claim, the petition charges that the defendants "did during the month of December, 1894, January, February, March, April, May and June, 1895, negligently and unlawfully permit, allow, honor and pay overdrafts drawn by E. W. Roop & Sons (doing business under the firm name of Monett Mill and Elevator Co.), and who were insolvent parties, to an amount of more than four thousand dollars, which have become a total loss to said bank and its stockholders."

It appears from the evidence that in the month of December, 1894, R. C. Stone was doing business in the city of Monett under the name of the Monett Mill and Elevator Company. That he was a man of large means, entirely solvent and reliable: That the Bank of Monett was his bank of discount and deposit; that his deposit account was kept in the name of the Monett Mill and Elevator Company. That this account was frequently overdrawn under an arrangement by which he was to pay interest on any overdrafts on said account. That in the month of December, 1894, the account was overdrawn to the amount of $3,500, and he was indebted to the bank on two notes, amounting to the sum of $3,715. About that time he sold the plant to E. W. Roop and Sons for about $11,000. The sale included debts due the mill and the purchaser assumed to pay its liabilities, and to secure the purchase money executed a deed of trust to Stone covering all the property conveyed. No cash was paid on the trade, and none thereafter, except a small amount of interest. Soon thereafter the bank was advised of this transaction, a new note was given by the Roops and Stone for the old notes of $3,715, but nothing was done in regard to the

overdraft. Thereafter the Roops, having taken charge of the mill, commenced operating it, and making deposits on said account and checking out the same. The deposits were made and the checks drawn in the name of the Monett Mill & Elevator Company and were respectively credited and charged on that account in the same manner as deposits and checks were credited therein before the transfer. This continued until some time in June, 1895, when the Mill was destroyed by fire and the account ceased, at which time the overdraft was about $4,000, consisting of overdrafts of Stone previous to the sale to the Roops, amounting to $3,500, and overdrafts by the Roops after the sale amounting to the sum of $500.

It seems that the bank had some assurance from the Roops that in the transfer to them the overdraft would be protected by an assignment of the insurance to the bank, but it turned out that this had not been done, and nothing was received thereon from that source. Afterwards E. W. Roop & Sons executed their note for $3,500 on account of the overdraft, but the note was never paid, and was sold with the other assets of the bank by the assignee, under the order of the court, and purchased at the assignee's sale by James P. Westbay for the sum of seven hundred dollars, leaving a balance due on the account of $3,300, for which suit was brought by the bank against Stone and his former partner, Prickett, which suit seems to be still pending (Bank v. Stone & Prickett, 93 Mo. App. 292).

Thus it appears that the overdrafts for which the plaintiff seeks to hold the defendants liable in this action are not the overdrafts of E. W. Roop & Sons "who were insolvent persons," but the overdrafts of R. C. Stone, who, at the time was, and, so far as this record shows, still continues to be, an entirely solvent person of large means.

In 1 Morse on Banks and Banking (4 Ed.), sec. 358, it is said: "By negotiating with the authorized

and proper officials, a customer may make a legal and binding arrangement by which his overdrafts, to a certain amount named and under the circumstances agreed upon, shall be honored. The dealing is in the nature of a loan; it is placing money at his disposal and control. There may be a standing agreement binding on the bank, for a definite period. Or there may be a mere naked permission, revocable at will.'' The overdrafts of Stone in this case was a loan of this character. It was made by the cashier, Harry H. Westbay, and the evidence tends to prove, with the knowledge and assent of the president, James P. Westbay, who were the proper and only officials authorized to make such loans, so far as the evidence shows. In making such loan, what was the measure of their duty and liability to the bank? It is thus stated in 4 Thompson on Corp., sec. 4828: ''The cashier of a bank is bound to exercise, in the execution of his trust, a reasonable degree of skill, care and diligence. On the other hand, if he has exercised this degree of skill, care and diligence, he is not answerable for losses happening through errors of judgment. If, for instance, he is entrusted with the duty of making a loan, he does not thereby become a guarantor of the solvency of the person to whom the money is lent, or of its repayment. He is not, it has been held, personally liable for permitting an overdraft, where the nature of the transaction is such that it is really a loan on sufficient security.''

As was said by LURTON, J., in Wallace v. Lincoln Savings Bank, 89 Tenn. l. c. 655, ''It is not negligence *per se,* in the absence of a by-law or order of a superior officer, for a cashier to pay the overcheck of a responsible customer. Such overchecking is not uncommon, and in practical banking is almost unavoidable.'' [See, also, Com. Bank v. Ten Eyck, 48 N. Y. 305.]

The record fails to disclose any reason why the amount of Stone's overdrafts have not been collected from him, but the mere fact that they have not been

affords no ground for charging the defendants with a breach of their duty in permitting the overdrafts to be made, when it is conceded that Stone, at the time they were permitted, was entirely solvent and responsible. If loss has accrued to the bank by reason thereof, it is from some other cause than the breach of duty charged in the petition. Many other reasons are assigned why the plaintiff cannot maintain his action, but sufficient has been said to show that the circuit court committed no error in dismissing the bill, and its judgment is affirmed.

All concur, except *Lamm, J.,* not sitting.