CITIZENS TRUST COMPANY, a Corporation, Appellant, v. L. A. FERGUSON, et al., Respondents.

Springfield Court of Appeals, December 22, 1916.

1. **BANKS AND BANKING:** Bond of Assistant Cashier: When no Liability On: Willful Acts. Action on indemnifying bond executed by one defendant, an assistant bank cashier and book keeper, and the other defendants as securities. Conditions of bond reviewed and evidence examined and it is *held* that said bookkeeper or assistant cashier, whose act was not willful, was not liable on his bond for appropriations of money by the cashier and other officers of the bank. That such assistant cashier had a right to assume that the directors of the bank had met, as was their duty under sec. 1099, R. S. 1909, at least once a month to pass upon the business of the bank and that a committee of stockholders had, as required by Sec. 1088, R. S. 1909, examined the affairs of the bank at least once a year.

2. **APPELLATE PRACTICE:** Finding of Referee: How Considered. In an action at law the referee's finding of facts stands as a verdict of a jury before the Court of Appeals.

Appeal from Pemiscot County Circuit Court.—*Hon. Sterling H. McCarty,* Judge.

AFFIRMED.

*C. G. Shepard* and *Oliver & Oliver* for appellant.

*R. L. Ward* for respondents.

ROBERTSON, P. J.—This is an action on an indemnifying bond in the penal sum of five thousand dollars executed by defendant L. A. Ferguson as principal, and the other defendants as sureties, to the Pemiscot County Bank, October 8, 1912, reading, except italics added for the purpose of reference, so far as necessary to quote, as follows:

"The Condition of the above and foregoing obligation is that if the said L. A. Ferguson as Assistant Cashier of the Pemiscot County Bank aforesaid, shall well and

truly account for all money, property of whatsoever, belonging to said Pemiscot County Bank, and which shall come under his control or possession, as said and such Assistant Cashier of and for said bank, *or if he shall well and truly account for all loss of money, or property, notes or evidences of debt, which may be occasioned or caused on account of his willful misconduct or failure to properly protect the property and interest of said bank,* and shall at all times observe and fulfill the duties and requirements had or made of him by the board of directors of and for said bank, and shall at any time deliver over to the directors of said bank, any, and all property, money, or evidences of debt, which may come into his possession, or under his control, during the time of his employment as said and such Assistant Cashier, then this obligation shall be void; otherwise to remain in full force and effect.''

The following concerning the bond is in the finding of facts to which reference is hereafter made:

''The minutes of the proceedings of the board of directors of said Pemiscot County Bank show that on March 27, 1912, a motion 'to instruct the cashier to employ temporarily any person that suited him to assist in the bank work' was 'duly seconded' and unanimously carried. Later, probably in July or August, in the same year, one W. H. Johnson was employed and the bond sued on in this case was prepared for, but not signed by him.

''In October, 1912, Tindle spoke to defendant, L. A. Ferguson, about taking employment at the bank as bookkeeper and agreed to put him in at ninety dollars per month, giving him, at this time, the bond sued on herein, to be filled. The bond was executed under date of October 8, 1912, by L. A. Ferguson, as principal, and his co-defendants, as sureties.''

Ferguson worked in the bank, doing the work of a bookkeeper, until May 13, 1913, when said cashier resigned. It was then discovered by the board of directors that the business of the bank had been so manipulated that said cashier, and other officers of the bank, had

dissipated nearly one-half million dollars of the bank's funds and up until then had accurately entered the customers' deposits on their pass books, but making the entry on the deposit ledger for a less amount, keeping an account of the difference in a separate place, a particular drawer set apart for that purpose.

When Ferguson entered upon his duties in the bank he was inexperienced in that line of work and for that reason reluctantly accepted the position. He would not discover the method of keeping the accounts of the depositors until he undertook to balance a pass book. When he did this and called the cashier's attention to the discrepancy he was directed to the drawer for the correct account, or duplicate pass book, of the particular customer whose account was to be balanced. This method applied to only the largest depositors, and it was a custom, as observed by Ferguson, that had prevailed for several years before he commenced work in the bank. There is no pretense that there is any evidence tending to show that Ferguson got any of the funds of the bank or intended to assist in any fraud upon the bank unless such facts may be inferred by reason of his failure to report the cashier's conduct to a superior.

Plaintiff alleges in its petition that it is the receiver of the Pemiscot County Bank and that Ferguson colluded and worked together with the cashier and other named officers of the bank for the fraudulent purpose of taking from said bank large sums of money belonging to it and appropriating the same to their own use; that in carrying out said designs Ferguson made the false entries on the bank books so the other officers and directors were deceived and misled and the shortages concealed. The petition then proceeds to allege false entries and naming the depositors, to the amount of over one hundred thousand dollars.

After the issues were made up the trial court appointed Mr. J. M. Haw, a member of the Caruthersville bar, referee to hear the testimony and to report his finding of facts and conclusions of law. The referee made his

report accordingly and recommended judgment for defendants. Plaintiff filed exceptions to the report which were overruled and judgment entered as suggested by the referee. The plaintiff has appealed.

The report of the referee disposes of all of the questions of fact and law submitted to him in a concise and clear manner.

The burden of the controversy here is on the question as to whether the conditions of the bond should be extended to cover the acts of Ferguson in falling into and carrying out the plan and methods of the officers of the bank, in the active charge thereof, in keeping the depositor's accounts. We shall assume, without so holding, that such acts were within the terms of the undertaking. The question then follows, and a correct decision of which properly disposes of . this case, what portion of the conditions of the bond apply, and did Ferguson breach such portion? We italicized the portion of the bond applicable to the conduct of which complaint is made. This is clear because he did nothing except keep books and a very few times waited on customers making small deposits no way involved in this suit or questioned, so that it cannot be properly said that any of the money lost ever came under his control or into his possession. The board of directors made no requirements and he was completely under the dominion of the cashier whose wishes he complied with to the letter.

But Ferguson's conduct, in order to hold the bondsmen, must have been, according to the terms of the bond, *willful* and this plaintiff recognizes by characterizing his acts complained of as fraudulent.

"Bonds frequently provide in effect that the principal shall well and truly or honestly, faithfully and efficiently discharge the duties of his position. A condition of this kind in the bond of a cashier or an assistant cashier of a bank has held not only to guarantee the personal honesty of such officer, but also to guarantee his competency, efficiency and diligence in the discharge of his duties. And while, within the scope of a bank

cashier's authority, and so long as he is apparently acting on behalf of the corporation, his directions may control the assistant cashier and teller and the latter may not be required to look beneath the surface of his superior's acts; still when the assistant cashier is led to believe that the cashier is violating his duty to the bank and is taking its funds for his own ends, irregularly and without authority from the directors, he has no right to aid in, or connive at, such misappropriation, and he is liable on his bond therefor." [3 R. C. L. 481, section 109.]

In the case of Cope v. Westbay, 188 Mo. 638, 646, 87 S. W. 504, a quotation as to the high office of cashier is approved that shows that he has properly executed his trust when he has exercised "a reasonable degree of skill, care and diligence."

Considering the age and experience of Ferguson when he went to work in the bank with the cashier who hired him and that nothing occurred to arouse any suspicions that the cashier was misappropriating the funds of the bank we think it going too far to assume that Ferguson was acting in bad faith. Besides, the cashier had held that position for years and had other large interests there. Ferguson was born and grew to maturity in that city. He no doubt had a high regard for the cashier and would naturally not do anything to question a custom that appeared to have been in vogue there for years and report to members of a board of directors who had ostensibly approved of it. The referee found, and we think properly so, that there was no collusion by Ferguson with the cashier or the other defaulting officials.

Suppose we argue that since Ferguson undertook this work his bondsmen should be held to what an experienced person would likely do under the same or similar circumstances, but that would be answered with the suggestion that the employee had a right to assume that the directors had performed their duty, met at least once a month, passed "upon the business of the bank back to the previous meeting of the board,"

as then required by section 1099 Revised Statutes 1909, and had observed and approved the manner of keeping a portion of some of the depositor's account elsewhere than on a ledger. He would also have had a right to assume that a committee of at least three stockholders of the bank had examined its "condition and affairs, assets, liabilities and management" not less than once a year, as then required by section 1088, Revised Statutes 1909, and found no reason for complaint as to the method of bookkeeping required of him by the cashier. We are mindful of the fact that the failure of some other officer to do his duty would be no excuse for Ferguson being derelict, but we are discussing what he had a right to assume when we resort to presumptions of law for a rule by which to measure his conduct.

The finding of facts in a case at law stands before us as a verdict of a jury (State ex rel. John P. Bell v. United States Fidelity & Guaranty Co., 236 Mo. 352, 375, 139 S. W. 163 and Commercial Bank v. American Bonding Co., 187 S. W. 99, 100) and from what we have said concerning the finding of the referee that Ferguson was in no collusion with the defaulting officers of the bonk it is evident we cannot disturb his finding, and we think it is so clear that neither Ferguson nor his bondsmen can be held to account for anything he did while working for the bank that we must affirm the judgment. It is so ordered.

*Farrington* and *Sturgis, JJ.,* concur.