## THE METROPOLITAN LIFE INSURANCE COMPANY V. ALICE T. QUINN BRUBAKER.

### No. 15,557. (96 Pac. 62.)

#### SYLLABUS BY THE COURT.

1. LIFE-INSURANCE—*Warranties by the Applicant.* If an applicant for life-insurance warrant the truthfulness of his answer to the question, "Have you consulted any other physician?" and agree that the policy issued in consideration of the warranty shall be void if the answer be false, the liability of the insurer depends upon the truthfulness of the answer.

2. —— *Same.* An applicant for life-insurance who from motives of his own has sought and obtained a professional interview with a physician regarding the state of his health can not truthfully answer the question referred to in the negative merely because the interview concerned some temporary ailment or indisposition slight in character and not seriously affecting health. The fact of a consultation with a physician does not depend upon the gravity of the subject of the interview.

3. —— *Warranties by a Minor—Disaffirmance by a Beneficiary.* The beneficiary of a life-insurance policy based upon a warranty of the character described can not disaffirm the warranty on the ground that the applicant was a minor and still enforce the policy.

4. EVIDENCE—*Privileged Communications—Waiver.* An applicant for life-insurance may make a valid contract with the insurer waiving the privilege afforded him by section 323 of the code of civil procedure, which renders a physician incompetent to testify to professional communications from his patient and knowledge of his patient obtained in a professional way.

Error from Shawnee district court; ALSTON W. DANA, judge. Opinion filed May 9, 1908. Reversed.

Insurance Co. v. Brubaker.

*Frank Doster*, for plaintiff in error.

*R. F. Hayden, George P. Hayden, R. H. Gaw,* and *Z. T. Hazen,* for defendant in error.

The opinion of the court was delivered by

BURCH, J.: The plaintiff brought suit to recover the amount of a policy of insurance issued by the defendant on the life of Frank E. Quinn. In connection with his application for insurance the insured stated in answer to a question propounded to him by the defendant's medical examiner that he had never had consumption. He also returned answers to questions relating to illness, medical attendance, and consultation with physicians, as follow:

"3. Give full particulars of any illness you may have had since childhood and name of medical attendant or attendants.

"Doctor Miller; smallpox; three years ago; Topeka, Kan.

"6*a*. Name and residence of your usual medical attendant?

"Have none.

"6*b*. When and for what have his services been required?

"Except smallpox, not since childhood.

"7. Have you consulted *any* other physician? If so, when and for what?

"No."

The insured agreed that the answers and statements in his application, including those made to the medical examiner, should be the basis of the contract of insurance, that such statements and answers were full and true, and that any false, incorrect or untrue answer or suppression or concealment of facts in any answer should render the policy null and void. The policy provided that it was issued in consideration of the answers and statements contained in the application, that all of such answers and statements were made warranties and a part of the contract, that if any answer or statement were not true the policy should be void, and that

the contract was completely set forth in the policy and application, taken together.

The defendant resisted payment on the ground the insured had consumption when he applied for insurance and that the answer to question No. 7 was false. Evidence was introduced upon which the jury might very well have found the insured had consumption before and at the time the contract was made. Evidence was also introduced showing that on October 6, 1902, the insured was admitted to the Atchison, Topeka & Santa Fe Railway Company's hospital at Topeka upon the recommendation of the hospital surgeon, who stated that he was then suffering from tuberculosis pulmonum; that his history was then taken and a physical examination of him made by one of the hospital physicians, with the result that his disease was diagnosed as pulmonary tuberculosis. It was further proved that upon January 14, 1903, and January 24, 1903, the insured consulted Dr. S. G. Stewart, of Topeka, professionally, who examined him and diagnosed his case as inflammation of the bronchial tubes, indigestion, and catarrhal condition of the stomach and bowels, but the doctor feared consumption and advised him to go to Colorado for his health. The application for insurance was made on January 29, 1903. The insured died on March 14, 1904, of acute tuberculosis.

The court instructed the jury as follows:

"The word 'illness,' as used in question No. 3 above, means a disease or ailment of such character as to affect the general soundness and health of the system seriously, and not a mere temporary indisposition which does not tend to undermine or weaken the constitution of the insured."

"The defendant claims that the insured consulted with Dr. S. G. Stewart on two occasions prior to the application for insurance, and therefore that the insured did not truthfully answer question No. 7, above quoted, with reference to consulting any other physician.

"The mere calling into a doctor's office for medicine

to relieve a temporary ailment or indisposition or the calling at the home of the insured by a doctor for the same purpose can not be said to be consulting a physician within the meaning of question No. 7. If the insured consulted Doctor Stewart prior to the making of the application for some illness, it was the duty of the insured to so state in his answer to this question, but if in calling upon Doctor Stewart he simply desired relief from some ailment or indisposition not amounting to illness or disease as herein explained, then the insured could truthfully answer this question as he did. It will be for you to determine from the evidence in this case whether the insured answered question No. 7 truthfully or not.

"It is the duty of a person applying for life-insurance under an application such as was made by the insured ·in this case to truthfully answer all questions therein contained to the best of his ability; but in answering a question calling for information concerning previous illness or medical attendance it is a matter of no importance whether or not the applicant at some previous time may have had some temporary ailment or indisposition, not serious or substantial in its nature, but soon over with, such as headache, bellyache, cold, or any such temporary disorder or disturbance of the physical health as would ordinarily yield to what is called home treatment. The applicant is not expected to remember all such ailments he has had during his life, or to disclose the same in his answers to such questions.

"The purpose of the insurance company in asking questions and securing answers in the application for insurance is to obtain information as to the kind of risk it is assuming when it issues a policy to the applicant.

"As to question No. 7 in the application, which the insured, Frank E. Quinn, answered to the effect that he had not consulted any other physician, I instruct you that this question calls only for consultations with respect to matters material to the risk and not for consultations in respect to some indisposition not properly called a disease. The burden is upon defendant to establish the falsity of any answer of the insured and the truth of any fact which would constitute a breach of the warranty upon which defendant relies."

The jury found for the plaintiff, and judgment was

entered on the verdict. The defendant prosecutes error, and among other matters assigns as error the giving of the instructions quoted.

It is true that the word "illness," as used in question No. 3 of the medical examination, is open to interpretation. No man ought to give lasting regard to all his little ailments, bruises, aches and pains; he can not fix them in his memory if he would; they do not affect the risk in life-insurance, and the insuring company cares nothing about them. Therefore illness clearly means something more than a temporary indisposition, slight and trivial in its nature, which does not really affect the soundness of the system, substantially impair the health, materially weaken the vigor of the constitution, or seriously derange the vital functions. It is also true that consultation with a physician implies more than a casual meeting with a doctor and a passing remark in reference to some bodily state or condition. Incidental conversations of this character are not kept in mind and are inconsequential when considered in relation to a life-insurance risk. But if a man, from motives of his own, has sought and obtained an interview with a physician regarding the state of his health, the fact of a consultation with the physician does not depend upon the gravity of the subject of the interview, as the court instructed the jury. A man may believe that he is in sound health, but he desires an expert opinion upon the subject. He may think he detects certain disturbances of his normal condition which apparently are not serious, but he desires to know what those disturbances indicate. He goes to a physician, tells his story, answers questions, submits to an examination, receives advice, perhaps is given medicine or other treatment, perhaps is assured there is nothing the matter with him, and is sent away without more. He has consulted a physician, whether he was sick or well. The man may have been wise or foolish to consult a doctor. Bread pills may have been an efficacious rem-

edy for him or he may have been stricken with a fatal disease. The fact of the consultation remains, and can not be negatived by any showing whatever relating to the true state of his health.

Very often men who are not strictly honest seek insurance on their lives, and a life-insurance company may properly be allowed to take full precautions against death-bed insurance. It is entirely reasonable that such a company should ask an applicant for insurance if he has consulted a physician. The question is simple and unambiguous. It is not like questions relating to illness, which may call for the opinion and judgment of the applicant upon a debatable matter hard to decide. It involves nothing which the applicant can not answer categorically out of his own personal knowledge. It relates to a fact which may be recollected as well as an illness. The question is important because if an affirmative answer be given the company may make an investigation and ascertain the exact truth regarding the cause for the consultation and the state of health it revealed or ought to have revealed. It requires no argument to show that the action of the company may well be influenced by the answer to this question. Taking, therefore, even a narrow view of the right of the insurer to exercise its own judgment and stipulate as to what is material, it is entirely fair that the truthfulness of such answer should be made the subject of a warranty. In this case the insured warranted the truthfulness of his answer to question No. 7 and accepted the policy upon the express condition that the insurer should not be liable to pay the stipulated indemnity if that answer were false. It was false, and the plaintiff can not recover.

The plaintiff cites some cases from Vermont and elsewhere holding contrary to these views. They can not be approved. In the case of *Hoover v. Royal Neighbors*, 65 Kan. 616, 70 Pac. 595, an applicant for life-insurance warranted the truthfulness of his answer to

the following question: "Have you within the last seven years consulted any physician in regard to personal ailment?" The answer was "No," and was false. The syllabus of the case reads:

"When, in a contract of insurance, the application of the insured is made the basis for, and a part of, the contract between the parties, and in the contract so made it is stipulated and warranted that the answers of the insured to questions propounded in the application are literally true, and it is also stipulated that if any such answer be found to be not literally true the contract shall become absolutely null and void, the validity of the contract depends on the truthfulness of the answers, and not on the materiality of the answers to the risk assumed. The contract of the parties having made the answers of the insured material, the same is avoided if such answers be found untrue."

The point is made that in the Hoover case the warranty was of the "literal" truth of the answer. The court is not disposed to distinguish between the literal truth and the truth unqualified of an answer which must be Yes or No. The Hoover case and the present decision are supported by the following authorities cited by the defendant: *Jeffries v. Life Insurance Company*, 89 U. S. 47, 22 L. Ed. 833; *McDermott v. Modern Woodmen*, 97 Mo. App. 636, 71 S. W. 833; *Assurance Society v. Reutlinger*, 58 Ark. 528, 25 S. W. 835; *Mutual Life Ins. Co. v. Arhelger*, 4 Ariz. 271, 36 Pac. 895; *Connecticut Mut. Life Ins. Co. v. Young*, 77 Ill. App. 440; *Nelson v. Nederland Life Ins. Co.*, 110 Iowa, 600, 81 N. W. 807; *Cobb v. Covenant Mutual Benefit Assoc.*, 153 Mass. 176, 26 N. E. 230, 10 L. R. A. 666, 25 Am. St. Rep. 619; *Dimick v. Metropolitan Life Ins. Co.*, 69 N. J. Law, 384, 55 Atl. 291, 62 L. R. A. 774; *Metropolitan Life Ins. Co. v. McTague*, 49 N. J. Law, 587, 9 Atl. 766, 60 Am. Rep. 661; *Price v. Phœnix Mutual Life Insurance Company*, 17 Minn. 497, 10 Am. Rep. 166; *Roche v. Supreme Lodge*, 21 N. Y. Supr. Ct., App. Div., 599, 47 N. Y. Supp. 774; *U. B. Mut. Aid Soc.*

*v. O'Hara,* 120 Pa. St. 256, 13 Atl. 932; *Caruthers v. Kansas Mut. Life Ins. Co.,* 108 Fed. 487; *Hubbard v. Mutual Reserve Fund Life Ass'n,* 100 Fed. 719, 40 C. C. A. 665.

The insured was a minor when the contract was made and at the time of his death. In the case of *O'Rourke v. John Hancock Mut. Life Ins. Co.,* 23 R. I. 457, 50 Atl. 834, 57 L. R. A. 496, 91 Am. St. Rep. 643, the court held a minor is not bound by the warranties contained in a contract for life-insurance, but that the policy is nevertheless enforceable against the insurer. In this state a minor is bound not only by contracts for necessaries but also by all other contracts, unless he disaffirms them within a reasonable time after he attains his majority. If he disaffirm he must restore to the other party all money or property received by him by virtue of the contract and remaining within his control. (Gen. Stat. 1901, § 4183.) This contract was not disaffirmed by the minor. It is binding upon him until disaffirmed, and the court knows of no one who can exercise the right to disaffirm except the minor. But if the plaintiff be allowed to represent the minor, the same consequences must follow as if the minor had acted. The contract of insurance is an entirety, and the statute gives the minor no right to disaffirm provisions which he finds burdensome and to enforce those which are to his advantage. If any material portion of the contract be disaffirmed, unexecuted provisions fall. The warranty is an integral part of the contract. It is an indispensable condition of liability on the part of the insurer. If the warranty be disaffirmed, liability on the contract must necessarily be destroyed. The contract can not be disaffirmed and then money be taken from the company by virtue of the contract when the return of such money, if it were in the minor's hands, would be a necessary element of disaffirmance. The Rhode Island case is disapproved.

Another question is discussed in the briefs which

will be of vital importance upon a retrial of the case. The application contains the following agreement:

"The provisions of section 834 of the code of civil procedure of the state of New York, and of similar provisions in the laws of other states, are hereby waived; and it is expressly consented and stipulated, that in any suit on the policy herein applied for, any physician who has attended, or may hereafter attend, the insured may disclose any information acquired by him in any wise affecting the declarations and warranties herein made."

Section 834 of the New York code forbids a physician to disclose any information which he acquires in attending a patient in a professional capacity. The corresponding provision of the law of this state is section 323 of the code of civil procedure, which reads as follows:

"The following persons shall be incompetent to testify:

"Sixth. A physician or surgeon, concerning any communication made to him by his patient with reference to any physical or supposed physical disease, or any knowledge obtained by a personal examination of any such patient; provided, that if a person offer himself as a witness, that is to be deemed a consent to the examination also if [of] an attorney, clergyman or priest, physician or surgeon on the same subject."

Section 836 of the New York code requires that any waiver of the provisions of section 834 must be made upon the trial or examination in which the question of competency arises. The statutes of this state do not so provide.

It is insisted the contract is a New York contract and must be construed according to the laws of that state. The New York statutes referred to relate to procedure, and to procedure in that state only. They do not undertake to regulate procedure in this state or to limit the right of parties to contract with reference to privileges granted by the laws of this state. If the trial had occurred in New York the procedure there

would have been followed and the stipulation would have been ineffectual. Since it occurred in this state the only question is if the waiver is good under the law here.

The statute quoted contemplates that the patient may consent to his physician's testifying. Therefore no question of public policy is involved. The public policy of the state does not depend upon the will of individuals who are free to act as circumstances may suggest them. It is elementary law that communications made in professional confidence are not incompetent. If a third person hear them he may testify. The disqualification is imposed upon the lawyer, physician or priest only, and not for his benefit or for the benefit of the public, but merely as a privilege to the client, patient or person confessing. This privilege, like many others, even those protected by constitutional guaranty, may be waived. By statute, if the party himself testify the privilege is waived. If he publish the confidential matter to the world the privilege is waived. (See *In re Elliott,* 73 Kan. 151, 84 Pac. 750; *In re Burnette,* 73 Kan. 609, 85 Pac. 575.) And it would deprive him of a valuable right if he were prohibited from making a waiver by contract in advance of litigation.

"The privilege may be waived, like all other privileges. It is astonishing to find that this question could ever have been regarded as debatable. Nothing but a confusion of fundamental ideas could ever create any doubt. . . . That a waiver may be irrevocably made by contract before litigation begun has generally been conceded by the courts. It should certainly be sanctioned unless made under conditions of duress or fraud which would have rendered the contract in other respects voidable." (4 Wig. Ev. § 2388.)

It is not necessary to pursue the discussion further. The contract is valid, and the waiver is binding.

The judgment of the district court is reversed, and the cause is remanded for a new trial.