Flack v. Brewster.

---

No. 22,543.

W. F. FLACK, GORDON FLACK, JOHN FLACK and ELLA VIEL-LEAUX, *Appellees*, v. MATTIE BREWSTER, *Appellant*.

SYLLABUS BY THE COURT.

1. DEED—*Mental Capacity of Grantor—Privileged Communications—Evidence of Physician—Waiver.* In an action by heirs of a deceased grantor, contesting the validity of a deed executed by the grantor to her sister shortly before her death, upon the ground of the unsoundness of her mind at the time of the execution, the testimony of a physician who attended her in her last illness as to knowledge gained by him in his professional capacity, relating to her mental condition, may be admitted, where the heirs of the deceased grantor have waived the statutory privilege afforded by section 321 of the civil code.

2. SAME — *Evidence — Privileged Communications — Parties Entitled to Assert the Statutory Privilege.* As the defendant in the action, although a sister of the deceased grantor, claimed no rights as heir or devisee, but defended solely on the basis of being the grantee in the deed, she is not entitled to assert the statutory privilege, or object to the testimony of the physician in regard to the competency of the grantor.

Appeal from Montgomery district court; JOSEPH W. HOL-DREN, judge. Opinion filed June 5, 1920. Affirmed.

*Claude J. Bryant,* and *Charles D. Shukers,* both of Independence, for the appellant.

*George H. Wark,* of Caney, and *Thomas E. Wagstaff,* of Independence, for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: The plaintiffs brought this action against their sister, Mattie Brewster, to cancel and set aside a deed executed to her by Mary Clifford, who was a sister of all the parties to this action. It was alleged that the instrument was executed and delivered a few days before the death of Mary Clifford, when she was mentally incapable of executing the instrument or of transacting business of any kind. From the testimony the court found that she did not have the mental capacity to execute the deed, and therefore set it aside and directed a partition of the property among the plaintiffs and defendant, they being her only heirs.

The principal contention on this appeal is that the testimony of two physicians who attended Mary Clifford in her last illness, which related to information as to her mental capacity, gained by them while attending her in a professional capacity, was improperly admitted. The testimony was admitted over the objection of the defendant and the grantee in the deed which was attacked. The objection is based on the statute providing that—

"The following persons shall be incompetent to testify:

.    .    .    .    .    .    .    .    .    .    .    .    .

Sixth, a physician or surgeon concerning any communication made to him by his patient with reference to any physical or supposed physical disease, defect, or injury, or the time, manner or circumstances under which the ailment was incurred, or concerning any knowledge obtained by a personal examination of any such patient, without the consent of the patient." (Gen. Stat. 1915, § 7223.)

The plaintiffs contend that the disqualification of the witnesses may be waived and that the objection to the privileges was not available to the defendant. They insist that as heirs at law and interested in the protection of the estate of the deceased, they could, and by the offer of the evidence did, waive the privilege, and that defendant was defending as grantee in the deed and was asserting no rights as heir, and was therefore not in a position to invoke the privilege or make the objection. There is considerable conflict in the authorities as to the application of the rule and as to when and by whom the privilege may be waived. It has been held in

a testamentary proceeding that the patient is the person interested in preserving unbroken the confidence reposed in his physician and after his death there is no one to assert the privilege. *Allen v. The Public Administrator*, 1 Bradf. [N. Y.] 221.) In 1 Wharton on the Law of Evidence, § 591, it is said:

"The privilege, it should also be remembered, is meant to protect the living in their business relations, and cannot be invoked when the question arises as to the intention of a deceased person in respect to the disposition of his estate."

(See, also, *Staunton v. Parker*, 19 Hun [N. Y.] 55 [N. Y.]).

Many authorities, however, hold that the privilege survives to personal representatives of the deceased, his family, and those personally interested in protecting his reputation and estate. (4 Wigmore on Evidence, § 2386.) That author says:

"The privilege, furthermore, is that of the patient as such, not of the party; hence, the claim should be made by the patient himself, in accordance with the analogy of other privileges (*ante*, §§ 2270, 2321)—though this rule is seldom observed in practice. The privilege, furthermore, may be claimed by the representative of a deceased patient, as his personal successor; but not by a mere assignee of a contract-interest."

On the other hand, it has been held that the prohibition of the statute is founded on public policy, and unless it has been expressly waived by the patient the testimony of the physician can never be revealed; that a waiver may not be made by an executor or administrator; that any party to an action can object to evidence coming within the prohibition unless the patient, the person for whose protection the statute was enacted, has waived the privilege; and that when the patient is dead the matter is forever closed. (*Westover v. Ætna Life Ins. Co.*, 99 N. Y. 56). *In re Flint*, 100 Cal. 391, adopted the rule of the Westover case just cited, and held that the heirs of a deceased person who contest his will cannot waive the privilege attaching to communications of a deceased person. In the opinion it was said:

"His rights are not buried in the grave, and heirs and devisees quarreling among themselves over a division of his patrimony, in justice to his memory, should not be allowed to waive the privilege."

In these cases others of similar import are cited.

In our state a more liberal view has been taken as to the matter of waiver. For instance, it has been held that as the

statute provides that the patient himself may consent to the testimony of the physician, no question of public policy is involved. The prohibition imposed on the physician is the privilege of the patient, and not of the physician, nor yet of the public, and therefore a patient may make a valid contract waiving the privilege afforded him in the statutory prohibition. (*Insurance Co. v. Brubaker*, 78 Kan. 146, 96 Pac. 62.)

In an action to recover possession of a tract of land alleged to have been conveyed to another when the grantor was of unsound mind, a physician who had attended the grantor in her last illness was offered as a witness by the surviving sisters, and heirs at law, but the testimony was rejected, and upon appeal it was held that the evidence was admissible. In the syllabus of the case it was said:

"The heirs at law of one who has been treated by a physician may waive the provisions of the statute making a physician incompetent to testify to any knowledge obtained in his professional capacity from the patient." (*Fish v. Poorman*, 85 Kan. 237, syl. ¶ 6, 116 Pac. 898.)

In another case deeds which had been executed shortly before the death of the grantor were assailed upon the ground that the grantor was without mental capacity to make them, and it was held that the testimony of an attending physician as to his knowledge obtained in a professional way might be received where the privilege was waived by his heirs at law. It was said that—

"This is in accord with the best judicial thought in this country on this subject, and takes nothing from the effect of defendants' citations." (*Bruington v. Wagoner*, 100 Kan. 10, 15, 164 Pac. 1057. See, also, the authorities therein cited.)

While the privilege is personal to the patient and may be waived by him, the general rule is that after his death the privilege may be waived by his legal representatives and those interested in the preservation of his estate. The plaintiffs herein who are suing as the heirs of the deceased, effectually waived the privilege by offering the evidence. They were interested in preserving the estate of the deceased, which would have been largely diminished if effect had been given to the invalid instrument. The defendant, however, is defending as grantee, and not as heir or devisee, and in this litigation she stands in the attitude of a stranger to the estate. Although

Flack v. Brewster.

she is a sister of the deceased, she is not asserting any claim by reason of heirship or relationship to the deceased, and has no greater right to invoke the privilege than would an outsider if the deed had been made to him. Restrictions on the full development of the facts and the ascertainment of the truth of a controversy are strictly construed, and the privilege being personal in its nature, it should not be extended by implication, especially after the death of the one for whose benefit it was given. In regard to the light in which the statutory privilege is to be viewed it has been said:

"The statute is not remedial in any proper sense of that term, as some courts would hold, but merely grants a privilege to persons in specified relations if they see fit to take advantage of it; and the terms of the statute will not be extended by implication or by interpretation, but will be strictly construed in favor of the competency of witnesses." (*Armstrong v. Street Railway Co.*, 93 Kan. 493, 503, 144 Pac. 847. Citing numerous cases.)

Speaking of the policy and effect of the privilege, Professor Wigmore says:

"That the relation of physician and patient should be fostered, no one will deny. But that the injury to that relation is greater than the injury to justice—the final canon to be satisfied—must most emphatically be denied. The injury is decidedly in the contrary direction. Indeed, the facts of litigation to-day are such that the answer can hardly be seriously doubted. . . . Certain it is that the practical employment of the privilege has come to mean little but the suppression of useful truth— truth which ought to have been disclosed and would never have been suppressed for the sake of any inherent repugnancy in the medical facts involved." (4 Wigmore on Evidence, § 2380.)

Of course the prohibition of the statute must be given the effect intended by the legislature, but so far as it is open to interpretation it should be strictly construed instead of reaching for an implication that would operate to suppress the true facts necessary to a just determination of the issue involved. Looking at the question in that light, we conclude that the plaintiffs waived the privilege, and that the defendant standing in the position of assignee or grantee is not entitled to invoke the privilege or object to the admission of the testimony offered. Although challenged, the testimony in the case is deemed to be sufficient to support the findings of the trial court, and its judgment is therefore affirmed.