Doty v. Crystal Ice & Fuel Co.

No. 25,852.

ANNA L. DOTY et al., *Appellees*, v. THE CRYSTAL ICE AND FUEL COMPANY, *Appellant*.

SYLLABUS BY THE COURT.

1. WITNESSES—*Confidential Relations—Persons Entitled to Assert Privilege.* The provision of our code (R. S. 60-2805) to the effect that physicians are incompetent to testify concerning certain matters does not create a privilege personal to the physician.

2. WORKMEN'S COMPENSATION—*Competency of Physician to Testify.* The provision of our code (R. S. 60-2805), in so far as it relates to the competency of a physician to testify, has no application to claims for compensation under the workmen's compensation act.

3. NEW TRIAL—*Excluded Evidence—Witness Claiming Privilege.* The provision of our code (R. S. 60-3004) requiring a party to produce, upon the hearing of a motion for a new trial, any excluded evidence, by the affidavit, deposition or testimony of the witness, cannot apply to a witness who claims a privilege from testifying, which claim was sustained.

Appeal from Montgomery district court; JOSEPH W. HOLDREN, judge. Opinion filed April 11, 1925. Reversed.

*W. E. Ziegler, A. M. Etchen,* and *Carl E. Ziegler,* all of Coffeyville, for the appellant.

*Charles D. Welch,* of Coffeyville, and *Thurman Hill,* of Independence, for the appellees.

The opinion of the court was delivered by

HARVEY, J.: This is an action by the widow on behalf of herself and minor children as dependents under the workmen's compensation law. The workman was injured January 20 by falling from a scaf-

fold and striking his head either on the floor or an iron pipe. He laid off three days, returned to work, and made no complaint to his employer or fellow workmen about his injuries, and never presented a claim for compensation. He continued to work for the same employer until about May 2, when for some undisclosed reason the employment was terminated. Later he worked a few days for the sash and door factory. About May 20 he was taken sick, and died on May 31. The physician's certificate shows death resulted from cerebrospinal meningitis. In August the widow presented claim for compensation, and arbitration being refused, this action was brought. On the trial the plaintiffs endeavored to show that the death was the result of the injury. The workman's physical condition from the time of the injury until his death was detailed by the plaintiffs and other witnesses. The nurse who attended him in the last sickness testified there was nothing about his symptoms to indicate spinal meningitis, though the attending physician took a specimen of the spinal fluid. Two physicians testified, from a hypothetical question, that death resulted, or might have resulted, from the injury received in January. The defendant offered the death certificate, which showed death resulted from cerebrospinal meningitis and that laboratory test had confirmed the diagnosis. The report of the laboratory test was offered in evidence, but was excluded. Defendant called Doctor Flatt, the physician who waited upon the workman in his last sickness and who made out the death certificate, and asked him several questions pertaining to the cause of death, the taking of specimens of spinal fluid and the laboratory test. Plaintiffs' counsel advised the witness that he was privileged to refuse to testify. Plaintiff Mrs. Doty for herself waived the privilege of the witness. Defendants urged that the privilege had been waived by the nature of the testimony offered by plaintiffs and the specific waiver of Mrs. Doty. The court held that the privilege was personal to the physician. The doctor claimed the privilege and he was not required to testify.

Appellants complain of the ruling of the court in refusing to require the physician to testify. The provision of our civil code relied upon to sustain the ruling of the trial court reads as follows:

"The following persons shall be incompetent to testify: . . . Sixth. A physician or surgeon concerning any communication made to him by his patient with reference to any physical or supposed physical disease, defect or injury, or the time, manner or circumstances under which the ailment was in-

curred, or concerning any knowledge obtained by a personal examination of any such patient, without the consent of the patient.

"But if a person, without objection on his part, testifies concerning any such communication, the attorney, clergyman, priest or physician communicated with may also be required to testify on the same subject as though consent had been given within the meaning of the last three subdivisions." (R. S. 60-2805.)

The court erred in holding this to be a privilege personal to the physician. In *Flack v. Brewster,* 107 Kan. 63, 66, 190 Pac. 616, it was said:

"The prohibition imposed on the physician is the privilege of the patient, and not of the physician, nor yet of the public, and therefore a patient may make a valid contract waiving the privilege afforded him in the statutory prohibition."

In 5 Wigmore on Evidence, 2d ed., 218, it is said:

"The privilege is plainly that of the *patient,* not of the physician, and the latter, therefore, cannot claim it if the patient abandons it."

It seems clear in this case that plaintiffs waived the privilege of the witness, if one existed, not only by the waiver by Mrs. Doty in open court, but by the nature of the evidence offered by them. (See *Armstrong v. Street Railway Co.,* 93 Kan. 493, 144 Pac. 847, and cases there cited; *Flack v. Brewster,* 107 Kan. 63, 190 Pac. 616; *Craig v. Craig,* 112 Kan. 472, 212 Pac. 72; *Chaffee v. Kaufman,* 113 Kan. 254, 214 Pac. 618.)

Though possibly only indirectly argued by appellant, there is another reason, ample in itself, why the ruling of the trial court was erroneous: The provision of our civil code above set out (R. S. 60-2805) has no application to the testimony of physicians in claims for compensation under the workmen's compensation act. In 5 Wigmore on Evidence, 2d ed., 205, after having pointed out that this privilege was unknown to the common law, and having traced its statutory development, it is said: "But modern industrial accident legislation has invariably repudiated the privilege in that class of inquiries," citing the provisions of the workmen's compensation statutes of many states, including our own.

The workmen's compensation act embodies a plan to compensate workmen, or their dependents, for loss of earnings because of personal injuries received by the workman, arising under the circumstances designated in the statute. Necessarily, the inquiry in every case is the nature and extent of the physical injury produced by the accident, which includes, of course, whether the physical injury or

the death was caused by the accident or resulted from other causes. This ordinarily is essentially a medical question, which can be determined only by the testimony of a physician who examined or treated the workman. Hence the statute provides for such examination and the use of the testimony of the physician (R. S. 44-515 to 44-519). To prevent unnecessary annoyance, the employer may not require the workman to submit to physical examination oftener than once in four weeks; and to prevent any fraud upon the workman, the employer when he requests an examination must notify the workman in time that the workman may have a physician of his choosing present; if this is not done, the employer's physician cannot testify, and—

"Except as provided herein, there shall be no other disqualification or privilege preventing the testimony of a physician who actually makes an examination." (R. S. 44-515.)

These provisions of the statute are a part of the contract of employment and are binding alike upon the employer and the employee or his dependents. Hence the purpose of the workmen's compensation act, the nature of the inquiry to determine liability, and the statute itself, preclude the application of the general provision of the civil code (R. S. 60-2805), in so far as it relates to the testimony of physicians, from having any application to claims for compensation under the workmen's compensation act.

Appellees contend that appellant should not be heard upon the error of which it complains, because of its failure to comply with the following provision of our code:

"In all cases where the ground of the motion is error in the exclusion of evidence, want of fair opportunity to produce evidence, . . . such evidence shall be produced at the hearing of the motion by affidavit, deposition, or oral testimony of the witness, and the opposing party may rebut the same in like manner." (R. S. 60-3004.)

And appellees cite *Grain & Lumber Co. v. Grain Co.,* 108 Kan. 631, 632, 196 Pac. 424, where it was said:

"The statute requires the party tendering the rejected testimony not only to indicate what he expects to prove by it, but also to demonstrate by the oath of the witness that he is able to make good his offer. If the mere production of the witness and an offer to make proof by him would satisfy the statute, much of its benefit would be lost."

Obviously this construction of the statute cannot apply to a witness who claims a professional privilege from testifying and whose claim is sustained, for if he continues to claim such privilege his

Doty v. Crystal Ice & Fuel Co.

affidavit could never be procured.  Under that construction of the
statute, the correctness of the ruling of the court in allowing the
claim of privilege of the witness could never be reviewed.  The stat-
ute was not designed to have such effect.  The question whether the
witness should be required to testify or his claim of privilege sus-
tained was sufficiently presented to the court when the witness was
on the stand at the trial.  It was not necessary to present affidavits
upon that question upon the hearing of the motion for a new trial.

Upon the hearing of the motion for a new trial, defendant's coun-
sel filed his affidavit, stating matters which affiant averred the wit-
ness Doctor Flatt had told him and what affiant was informed and
believed the witness would have testified to if the court had not
sustained his claim of privilege.  The plaintiffs then filed the affi-
davit of Doctor Flatt, in which was controverted the material mat-
ters in the affidavit of defendant's counsel.  And appellees now
argue, since the affidavit of Doctor Flatt discloses that his testi-
mony would not have been favorable to defendant, a new trial
should not be ordered.

But the statute (R. S. 60-3004) should not be applied to a case
to which it is not applicable.  On the trial the real controversy was
whether Mr. Doty's death was the result of the injury of January
20.  That was plaintiffs' contention, while defendant sought to show
that the death resulted from cerebrospinal meningitis of epidemic
form, and could not possibly have been caused by the accidental
injury.  The erroneous ruling of the court upon the trial prevented
a proper inquiry into that question, and the affidavit of Doctor Flatt
upon the motion for a new trial was not sufficiently conclusive
against defendant to overcome the effect of the erroneous ruling.

The judgment will be reversed with directions to grant a new trial.