No. 36,195

THE STATE OF KANSAS, ex rel. A. B. MITCHELL, Attorney General, *Appellant,* v. MORGAN ROSS, *Appellee.*

(152 P. 2d 675)

Opinion filed November 4, 1944.

*Warden L. Noe,* special assistant attorney general, argued the cause, and *A. B. Mitchell,* attorney general, *Eldon Wallingford,* assistant attorney general, *Edward C. Schroeter,* county attorney, *Charles L. Hunt* and *Frank Baldwin,* both of Concordia, were on the briefs for the appellant.

*W. D. Vance,* of Belleville, argued the cause, and *Fred Emery, Fred Swoyer,* both of Belleville, and *Lee R. Stanford,* of Concordia, were on the briefs for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This was an action by the state on the relation of the attorney general to enjoin defendant from obstructing the flow of water in the stream and for an order requiring defendant to restore the stream to the condition it was in before he committed the acts complained of. The trial court heard the evidence and granted the preventive injunction. From that part of the judgment no appeal has been taken. The court declined to make the restoration order sought by plaintiff, and from the refusal thereof the plaintiff has appealed.

The pertinent portions of the principal statute in question read as follows:

"It shall be unlawful for any person . . . to construct any dam or other water obstruction; or to make or construct, . . . any change therein or addition thereto; or to make, . . . any change in or addition to any existing water obstruction; or in any manner to change or diminish the course, current, or cross section of any stream within this state without the consent or permit of the chief engineer of the division of water resources in writing, previously obtained. . . . ." (G. S. 1935, 82a-301.)

"The chief engineer of the division of water resources shall have power to grant or withhold such consent or permit or may incorporate in and make a part of said consent or permit such conditions, regulations and restrictions as may be deemed by him advisable. It shall be unlawful to construct or begin the construction of any such water obstruction, or to make or begin any change or addition aforesaid, except in accordance with the terms, conditions, regulations, and restrictions of such consent or permit, and such rules and regulations, with regard to said obstructions, changes, or additions, as may be prescribed by the chief engineer of the division of water resources." (G. S. 1935, 82a-303.)

"Any person . . . who shall violate any of the provisions of [the sections above set out] shall be deemed guilty of a misdemeanor and upon conviction shall be fined in any sum not exceeding one thousand dollars; *and may further be enjoined from such acts upon petition filed by the attorney general in any court of competent jurisdiction.*" (G. S. 1935, 82a-305.) (Italics supplied.)

The action is brought by virtue of the authority conferred by the italicized portion of the section last quoted.

The pertinent portions of the petition filed September 9, 1943, may be summarized as follows: That the defendant is operating and maintaining a sand pump and sand plant for commercial purposes at three designated locations in Cloud county upon, along and near the northern bank and within the bed and channel of the Republican river, a stream which flows eastwardly at the designated points, in

such a manner as to construct a water obstruction and to change the course, current and cross section of the stream; that defendant has deposited sand, gravel and other waste material in the bed and channel of the stream and is maintaining sand, gravel and waste material dumps within the bed and channel of the stream which extend southerly beyond the normal center of the bed and channel of the stream, and that by reason thereof damage has been and is being caused to land immediately opposite and across the river from the dumps and obstructions; that if these dumps and obstructions are allowed to be maintained or added to, such land is in immediate danger of being flooded and eroded, to the great damage of the land and to the owners thereof, and will result in further change of the cross section and location and channel of the bed of the stream in this area; that the defendant had not obtained the consent or permit of the chief engineer of the division of water resources of the state board of agriculture authorizing him to construct a water obstruction, or authorizing him to change the course, current or cross section of the stream. The prayer was that the defendant be enjoined from operating the sand dump and plant within the channel and bed of the Republican river at the places designated, or to cause him to construct any water obstruction, or to make any change in the course or cross section of the stream without having first obtained the written consent and permit of the chief engineer of the division of water resources of the state board of agriculture; and further, that defendant be required to remove all sand, gravel and waste material dumps constructed by him within the stream, and that he be required to restore the bed and channel and cross section of the stream to the condition which existed prior to his operation thereon.

In defendant's answer he admitted that he owned the tracts of land as described, that he was operating a sand pump and sand plant upon a portion of the land in producing sand and gravel products from the river adjacent to his premises. He denied generally other allegations of the petition and specifically denied that his acts and business operations had resulted in creating obstructions or other hazards, damage, or threatened damage, such as was alleged in the petition. He further alleged that it was not necessary or legally required of him, under the provisions of the statute pleaded by plaintiff, or any other pertinent statute, that he obtain any permit or license from any official or governing body of the state as a condition precedent as to his so operating and conducting his business. The reply put in issue the affirmative allegations of the answer.

The court heard the evidence, which disclosed among other things that defendant had been operating his sand pump in the river near his land and had returned to the river large quantities of reject sand, and that he had had no permit to so operate. There was much evidence of a kind proper in a case where the owner of the real property on the opposite side of the river was suing defendant for damages upon the theory that defendant, by his operations, had so changed the flow of the water in the river as to damage the owner of the property on the other side. In the view we take of the case it will not be necessary to summarize this evidence or the findings of the court thereon. From all this evidence the court found that the Republican river is a public stream, and the bed thereof is, subject to the exceptions mentioned in G. S. 1935, 71-106, the property of the state of Kansas; that the operations of defendant in pumping sand and gravel from the river without a license, as provided in G. S. 82a-301 *et seq.*, are contrary to law, and that defendant should be permanently restrained and enjoined from operating his sand and gravel plant within the bed and channel of the river, or upon the real property described in plaintiff's petition, until such time as he shall secure a permit to operate the same from the chief engineer of the division of water resources of the state. The court retained jurisdiction for the hearing of further evidence upon the question of plaintiff's request for a mandatory injunction and for the purpose of determining what, if any, order should be made requiring defendant to restore the normal flow of the river. Later evidence was taken upon those questions, with the result that the court denied plaintiff's prayer and request for a mandatory injunction, denied plaintiff's motion that the court make additional findings of fact, and denied the motion of each party for a new trial. The plaintiff alone has appealed, and only from that part of the court's judgment denying a mandatory injunction and denying plaintiff's request for additional findings of fact, and for a new trial.

As presented to this court we are confronted, first, with the legal question of whether the plaintiff, in an action under the statute (G. S. 1935, 82a-305) is entitled to a mandatory injunction. Appellant argues that the word "injunction" includes both a preventive injunction, that is, to require the party to cease doing something, and authority of the court to compel defendant to do something. We take note of the fact that in our code of civil procedure (G. S. 1935, 60-1101) it is said:

"The injunction provided by this code is a command to do or refrain from doing a particular act. . ."

That may be said to accord with the broad definition (2 Story, Equity Jurisprudence, 14th ed. 1181; 32 C. J. 19), but the term is frequently used as applying only to preventive relief. (*City of Alma v. Loehr*, 42 Kan. 368, 22 Pac. 424; 32 C. J. 21-24; 28 Am. Jur. 199.) Courts generally are reluctant to render a decree for a mandatory injunction, and a party asking for it must be clearly entitled to it before such a decree will be rendered. (Lewis and Spelling, The Law of Injunctions, § 22; 28 Am. Jur. 210; 32 C. J. 22; *Cave v. Henley*, 125 Kan. 214, 264 Pac. 25.) We question whether these general definitions are of much value here. The statutes before us (G. S. 1935, 82a-301, 82a-303) declared certain acts to be unlawful by G. S. 1935, 82a-305. By this section one who commits such acts is deemed guilty of a misdemeanor, and should be fined, "and may further be enjoined from such acts" upon the petition of the attorney general. We think a proper interpretation of this statute is that the attorney general is authorized to bring an action to enjoin one from committing the act which the statute defines as constituting a misdemeanor. In other words, the statute is apparently limited to a preventive injunction as distinct from a mandatory injunction. There is no hint in the statute that the attorney general, in the name of the state, may maintain an action to require one who has violated the act to restore the river to its former condition. Since by enacting the statute the legislature indicated the type of an injunction the attorney general may maintain with respect to these unlawful obstructions in streams, and has indicated only that a preventive injunction may be obtained, we think the court would not be justified in enlarging that authority so as to say that a mandatory injunction should be allowed requiring one who had violated the statute, and who was thereby subject to a heavy fine—although he may not have been prosecuted—should be required to restore the stream to its former condition. Appellant cites and relies heavily upon *A. T. & S. F. Rld. Co. v. Long*, 46 Kan. 701, 27 Pac. 182, where the syllabus reads:

"When a railroad company, in the construction of its road across a natural watercourse, covers up a spring from which a part of the supply of water issues, builds a large embankment, and by other means totally diverts the water from the land of a person through whose land the water naturally flowed before the construction of the road, such person is entitled to a mandatory injunction against the railroad company."

But the decision in that case was predicated upon a statute, now G. S. 1935, 66-501, clause 4, spoken of in the opinion (p. 703) as "a special statutory provision requiring a railroad company 'which constructs its track along or across a watercourse, to restore the watercourse to its former state, or to such a state as not necessarily to impair its usefulness.' " There is no such statute applying to the procedure before us. Appellant cites some cases from the federal courts and from other jurisdictions, but these are actions in which the plaintiff was an injured landowner suing for damages. We have no such question here.

In appellant's brief it is correctly pointed out that under the statute here involved the chief engineer of the division of water resources is given the authority, and it is made his duty, to pass upon the application for a permit of one who contemplates making obstructions or changes in the course, current or cross section of a stream, and that the chief engineer's grant of authority ends with the passing upon such an application and the issuance or refusal to issue the permit. The statute authorizes criminal proceedings for its violation, and further authorizes the attorney general, in the name of the state, to bring an action in a court of competent jurisdiction to enjoin such operations by one who does not have a permit granted by the chief engineer of the division of water resources. That is as far as the legislature granted authority to the attorney general. It did not grant to him authority to assume the burden of conducting an action on behalf of an individual landowner who claims to have been damaged by the placing of obstructions in a stream, or changing its course or current, without a permit to do so from the chief engineer of the division of water resources. The attorney general could maintain the injunctive action irrespective of whether anyone claimed to have suffered injury. The allegations in the petition to the effect that the landowner on the south side of the river was damaged by defendant's operations were surplusage, not pertinent to the injunction action, and opened a field of controversy not contemplated by the statute. We think it clear the injunction authorized is a preventive one and certainly is not a mandatory injunction to require the restoration to a private landowner of what he claims to have lost by the unauthorized acts of the defendant.

Certainly such a mandatory injunction is a distinct thing from a preventive injunction, and might be much more onerous. The evidence in this case was conflicting upon the effect upon the stream of the sand dump placed in the river by defendant's operations. There

was also much uncertainty with respect to how the stream might be restored to its former condition, or what the expense of it might be, or whether what might be ordered done would be effective. Respecting those matters the court found so much uncertainty that it declined to make a specific order for the defendant to do any specific thing for the restoration of the stream. Even if we thought the statute justified a mandatory order we would have no occasion upon the record before us to overrule or set aside the trial court's view of the impracticability of attempting to frame a just and effective order for the restoration of the stream.

The result is the judgment of the court below must be affirmed. It is so ordered.