No. 42,116

Pyramid Life Insurance Company, a Corporation, *Appellant*, v. Gleason Hospital, Inc., a Corporation, *Appellee.*

(360 P. 2d 858)

Opinion filed April 8, 1961.

*Wendell S. Holmes,* of Hutchinson, argued the cause, and *Roscoe E. Peterson* and *Russell L. Strobel,* both of Larned, were with him on the briefs for the appellant.

*W. H. Vernon* and *Vincent G. Fleming,* both of Larned, argued the cause and were on the briefs for the appellee.

The opinion of the court was delivered by

Schroeder, J.: This is an action by an insurance company against a hospital for money damages and a mandatory injunction to compel the hospital to permit the insurance company to review and copy the hospital records of the insurance company's policyholders who have been patients in the hospital.

The third amended petition was challenged by a demurrer on several grounds, but was sustained by the trial court on only one ground—that the petition fails to state facts sufficient to constitute

a cause of action "for any permanent injunction, mandatory or otherwise." Appeal has been duly perfected from this order by the insurance company.

The third amended petition alleges that for many years prior to commencing this action, the Pyramid Life Insurance Company, a corporation (appellant), was engaged in writing health and accident insurance in Kansas. Between November 30, 1953, and the commencement of this action, many of the appellant's policyholders received treatment and care in the Gleason Hospital, Inc., a corporation (appellee), for which they submitted claims under their policies to the appellant. These claims were paid in the usual course of business upon receipt of proof of loss forms supported by physicians' statements and bills from the appellee. Each proof of loss form was accompanied by written authorizations on the part of the policyholder and his attending physician authorizing the appellee to permit the appellant or its representative to review the policyholder's hospital record.

The third amended petition further alleges that in February, 1959, the appellant made a special audit of certain claims which had been paid by the appellant. These claims included charges for treatment and care in the appellee hospital. This audit disclosed the appellee had billed the appellant's policyholders for certain charges and services "which had not been furnished the policyholders, which were not required and/or which were false and misleading and inconsistent with the medical records and histories prepared and maintained" by the appellee. (Exhibit A, attached and made a part of the petition, names twenty-one policyholders and explains the overcharges and payments.) As a result of such false and misleading statements the appellant had paid claims in the amount of $1,718.65, for which demand was made upon the appellee on July 13, 1959, but which the appellee refused to pay.

In view of the discovery of substantial fraudulent overcharges relating to the limited number of claims which were audited, it is alleged the appellant "has reason to believe and does believe and hereby alleges that a review of the records, charts and medical histories of *other policyholders who have allegedly been treated or confined* to Defendant Gleason Hospital, which review has been and continues to be denied Plaintiff by the Defendant, would disclose other, similar fraudulent overcharges, the exact amount of which is unknown to Plaintiff but is well known to Defendant." (Emphasis added.)

The petition further alleges the appellant "has on various and sundry occasions submitted to the Defendant, its agents, servants and employees, verbal and written requests that Plaintiff's representatives be permitted to inspect and review the medical records, charts and medical histories and/or to procure photostats or photocopies thereof, of those policyholders who have furnished written authorizations for inspection, as aforesaid, to the Defendant; that despite the furnishing of said written authorizations by the policyholders and the demand by the Plaintiff or Plaintiff's representatives, Defendant has failed, neglected and refused to permit such inspection and review to be made, and/or has refused to permit such representatives to make photostats or photocopies, and Defendant continues to fail, neglect and refuse to permit such inspection, review and/or copying."

In the *prayer* of the petition the appellant seeks judgment against the appellee for:

(1) A temporary injunction restraining and enjoining the appellee "pending the final determination of this action, from destroying, altering, secreting, obliterating or tampering with the hospital and medical records, charts and medical histories in possession" of the appellee bearing upon the treatment and care given the appellant's policyholders, and the charges made therefor, concerning the following patients, "who now are or were at the time of treatment and/or confinement policyholders of" the appellant: (Eighty-three persons are named.)

(2) "Enjoining, restraining and forever debarring the Gleason Hospital, Inc., its agents, servants and employees, from preventing representatives of Plaintiff from inspection, reviewing and/or photocopying the hospital and medical charts, records and medical histories of those persons who now have, have had or may hereafter have claims for benefits pending against Plaintiff resulting from confinement and/or treatment in Gleason Hospital where such persons have, in writing, duly authorized such inspection by Plaintiff or its representatives."

(3) "A mandatory injunction ordering and directing Defendant, its agents, servants and employees, to furnish Plaintiff or its representatives, upon submission of written authorization therefor signed by the policyholder, permission to inspect and review the hospital and medical charts, records and medical histories relating to the policyholder who has executed such authorization; and/or ordering and directing Defendant to permit Plaintiff or its representatives, upon request, to make photostats or photocopies of any and all hospital and medical charts, records and medical histories of Plaintiff's policyholders who now have, have had or may hereafter have claims pending against Plaintiff for charges resulting from confinement and/or treatment in said Gleason Hospital."

(4) For money judgment against the appellee in the sum of $1,718.65, "and for such additional sum which may be found to be due and owing by

said Defendant, by reason of any illegal, unauthorized, fraudulent or excessive claims and benefits paid to the Defendant or to Plaintiff's policyholders."

The prayer also seeks costs and requests "other and further proper relief."

To avoid misinterpretation of the issue presently before the court, it is important to note the order of the trial court in ruling upon the demurrer to the third amended petition left standing the appellant's cause of action for money damages in the amount of $1,718.65.

The allegations in the third amended petition upon which a mandatory injunction is sought may be clarified somewhat by disclosing the absence of certain elements or features from such allegations. Nowhere is it alleged that any patient of the appellee hospital, or any authorized representative on his behalf, or the appellant insurance company, ever requested or was ever refused an inspection or a copy of the hospital record *at the time of presentation and settlement of his insurance claim.* Furthermore, it is not alleged that the appellant overpaid the claims of all or any of the eighty-three persons (named only in the prayer of the petition, paragraph [1]) through the fault or wrongdoing of the appellee, and there is no prayer for a money judgment *in any amount* as to these eighty-three alleged policyholder patients.

The third amended petition simply boils down to a suit for recovery of a specific sum of money, coupled with a demand for a *bill of discovery* in the guise of a permanent mandatory injunction, compelling the appellee hospital to yield to representatives of the appellant the right to enter upon the premises of the appellee at any time and under any circumstances, and to inspect, review, and/or make photostatic copies of anything and everything relating to any patient of the appellee *who was or had been* a policyholder of the appellant.

In our code of civil procedure privileged communications are recognized in G. S. 1949, 60-2805. Under subparagraph *Sixth,* a physician or surgeon is incompetent to testify "concerning any communication made to him by his patient with reference to any physical or supposed physical disease, defect, or injury, or the time, manner or circumstances under which the ailment was incurred, or concerning any knowledge obtained by a personal examination of any such patient, without the consent of the patient." The disqualification is imposed only upon the physician or surgeon, and not for his benefit or for the benefit of the public. It is merely a

privilege to the patient and may be waived. The physician cannot claim it if the patient abandons the privilege. Therefore, the patient may waive his privilege by contract in advance of litigation. (*Insurance Co. v. Brubaker*, 78 Kan. 146, 96 Pac. 62; *Flack v. Brewster*, 107 Kan. 63, 190 Pac. 616; *Doty v. Crystal Ice & Fuel Co.*, 118 Kan. 323, 235 Pac. 96; and *State v. Cofer*, 187 Kan. 82, 353 P. 2d 795.)

Upon the foregoing premise the appellant develops the following argument. The doctor-patient relationship is a fiduciary one and it is incumbent upon the doctor to reveal all pertinent information to his patient. (*Natanson v. Kline*, 186 Kan. 393, 350 P. 2d 1093.) The same is said to be true of the hospital-patient relationship. (*Wohlgemuth v. Meyer* [Cal., 1956], 293 P. 2d 816.) Hospital records are kept for the benefit of the patient, the hospital and the physician, and as an essential part of the contractual relationship between the hospital and the patient, the patient's interest and right in his hospital records is said to be superior to that of either the hospital or the physician. In both cases it is said the fiduciary relationship and the right of the patient to a full and frank disclosure of all the facts relating to his physical condition vests the patient with the exclusive control over the review of his medical records by third parties.

The appellant relies for theory upon the topic of Discovery treated in Corpus Juris Secundum as follows:

"Medical records of a patient are subject to inspection on the demand of the patient himself; and, where the action is by the former patient against the hospital, all hospital records involving diagnosis, treatment, and prognosis of the patient should be produced for plaintiff's discovery and inspection." (27 C. J. S., Discovery, § 72, p. 232.)

"Hospital records are also privileged and not subject to discovery, except where there is a waiver of the privilege, although, under or apart from statutes so providing, hospital records have also been held to be subject to the provisions relating to inspection." (27 C. J. S., Discovery, § 72, p. 231.)

The appellant also relies upon cases from foreign jurisdictions in which medical records of an individual patient were necessary to litigation involving such patient. (*Hoyt v. Cornwell Hospital* [1938]), 6 N. Y. S. 2d 1014; *In re Greenberg's Estate* [1949], 89 N. Y. S. 2d 807; *Application of Weiss* [1955], 147 N. Y. S. 2d 455; and *Wallace v. University Hospitals of Cleveland* [Ohio, 1959], 164 N. E. 2d 917.)

The appellant argues if a patient has the right to inspect his hospital records, then the patient must also have the authority to delegate this right of inspection to third parties for any legitimate purpose. Such a delegation to the patient's insurer for the purpose of investigating insurance claims not only serves a legitimate purpose, but is an absolute necessity in the conduct of the hospital insurance business. It is said a hospital which denies the insurer the opportunity to check hospital records either in advance of settlement or in connection with a post-settlement audit of claims, interferes with and can irreparably injure the business of the insurer, by forcing it either to deny the claims and thereby lose the renewal business of its policyholders and subject itself to lawsuits, or to pay all claims submitted without regard to the effect of such payments upon its financial solvency. (Kansas authorities are cited to show that insurance is a business affected with a public interest.)

The appellant relies upon federal decisions and particularly *Pyramid Life Ins. Co. v. Masonic Hosp. Ass'n of Payne Co.,* (Okla.) 191 F. Supp. 51 in which Judge Stephen S. Chandler filed a memorandum opinion on February 8, 1961. On facts which appear for all practical purposes identical to those alleged in the third amended petition herein, the Pyramid Life Insurance Company was successful. The court issued a mandatory injunction, but the court found the plaintiff was denied access to the records prior to litigation and was *accordingly entitled to discovery.*

No Kansas authorities, except as heretofore noted, are relied upon by the appellant to sustain its position. We need not determine hypothetical cases in which a former patient, as an individual, brings an action against a hospital and seeks a copy of or information from the medical records of the hospital concerning his case. That is not the situation confronting us.

The appellant either seeks to circumvent or fails to recognize that a bill of discovery is not authorized by the Kansas code of civil procedure or in the practice of the Kansas courts. Even in jurisdictions where discovery is one of the tools which may be employed in the development of a lawsuit, such as in the federal courts, the remedy does not constitute an unrestricted fishing license.

In 27 C. J. S., Discovery, § 2, pp. 9 and 10, it is said:

"Nevertheless, the power to grant discovery must be exercised within very definite limits. A prime essential to the allowance of discovery is that it be in

aid of a known case. In other words the discovery sought must be incidental to some relief which a court has the right to grant, for a court of equity will not grant discovery merely to gratify curiosity, or to enable a party to engage in a fishing expedition in the hope of netting a case or defense, or to pry into the case of his adversary. The court is bound to protect defendant against undue inquisition into his affairs . . . ."

Similarly in 17 Am. Jur., Discovery and Inspection, § 10, pp. 14 and 15, it is said:

"The right to require a disclosure is generally limited to instances where there is a real cause of action pending or imminent, and the court is entitled to the information in aid of proper judicial proceedings. The applicant must show a cause of action or defense existing in aid of which discovery is sought, and disclosure cannot be required if the action or the defense itself cannot be maintained. In other words, a party is not entitled to a discovery to enable him to ascertain whether he has a cause of action."

If a party has a cause of action the Kansas code of civil procedure provides an adequate remedy at law. G. S. 1949, 60-2850, provides:

"Either party or his attorney may demand of the adverse party an inspection and copy, or permission to take a copy of a book, paper or document in his possession or under his control containing evidence relating to the merits of the action, or defense therein. Such demand shall be in writing, specifying the book, paper or document with sufficient particularity to enable the other party to distinguish it; and if compliance with the demand within four days be refused, the court or judge, on motion and notice to the adverse party, may in their discretion order the adverse party to give to the other within a specified time an inspection and copy or permission to take a copy of such book, paper or document; and on failure to comply with such order the court may exclude the paper or document from being given in evidence, or if wanted as evidence by the party applying may direct the jury to presume it to be such as the party by affidavit alleges it to be. This section is not to be construed to prevent a party from compelling another to produce any book, paper or document when he is examined as a witness."

The relief which the trial court denied the appellant in ruling upon the demurrer to the third amended petition was correctly denominated a mandatory injunction—it was seeking to compel the performance of certain acts by the appellee hospital and its staff. Courts generally are reluctant to render a decree for a mandatory injunction, and a party asking for it must be clearly entitled to such decree before it will be rendered. (*A. T. & S. F. Rld. Co. v. Long*, 46 Kan. 701, 27 Pac. 182; *Cave v. Henley*, 125 Kan. 214, 264 Pac. 25; and *State, ex rel., v. Ross*, 159 Kan. 199, 152 P. 2d 675.)

In our opinion the trial court did not err in sustaining the demurrer to the third amended petition as to the cause of action seeking a mandatory injunction. In effect, it is an attempt by the

appellant to discover whether it has a cause of action against the appellee on old insurance claims that have long been paid, and it does not concern the processing of present or future claims as suggested by the appellant in its argument or in its prayer for relief.

The judgment of the lower court is affirmed.